UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,       )
                                )
        *Plaintiff,*            )
                                )
v.                              )        No. 08-Cr-181
                                )
MARIO S. LEVIS,                 )
a/k/a "Sammy Levis,"            )
                                )
        *Defendant.*           )
_____ )

> **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DISCLOSURE OF A WITNESS LIST, EXHIBIT LIST, AND RULE 404(B) EVIDENCE NOT LATER THAN 90 DAYS PRIOR TO TRIAL**

# T<small>ABLE OF</small> C<small>ONTENTS</small>

**Page**

I.     Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   The Defendant's Requests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     A.     Production of a Witness List . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     B.     Production of an Exhibit List . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     C.     Specific Notice of Rule 404(b) Evidence . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

EXHIBITS

     A:     Declaration of Maria D. Neyra, Esq.

     B:     Letter of June 12, 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **No. 08-CR-181** |
| | ) | |
| MARIO S. LEVIS, | ) | |
| a/k/a "Sammy Levis," | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL DISCLOSURE OF A WITNESS LIST, EXHIBIT LIST, AND RULE 404(b) EVIDENCE NOT LATER THAN NINETY (90) DAYS PRIOR TO TRIAL

Defendant **MARIO S. LEVIS**, through counsel, respectfully submits this memorandum of law and accompanying exhibits in support of his motion, pursuant to Fed. R. Crim. P. 7(f) and 16, Fed. R. Evid. 404(b) and the Due Process Clause of the Fifth Amendment, for an order compelling the government to provide him, not later than **ninety (90)** days prior to trial, with the following: A) a witness list; B) an exhibit list; and C) specific notice of Rule 404(b) evidence. The government has agreed to provide this information **thirty (30)** days prior to trial, but given the volume of discovery, the breadth of the case, the severity of the potential punishment upon conviction, and the need for counsel to relocate to New York before trial (if a change of venue is not granted), such a time frame is insufficient for the defense to be adequately prepared to proceed to trial in an effective manner.

I.    **INTRODUCTION**

This is a complicated securities fraud case involving purported misrepresentations by defendant Mario S. Levis about the proper valuation of a peculiar financial instrument called "interest-only strips" that were owned by Doral Financial Corp. ("Doral"), a publicly-traded financial holding company headquartered in Puerto Rico.  The Indictment stems from a lengthy SEC investigation.  Defendant Levis has pleaded not guilty.

The discovery in this case has left the defendant and his lawyers "buried in paper." *See United States v. Turkish*, 458 F. Supp. 874, 882 (S.D.N.Y. 1978), *aff'd*, 623 F.2d 769 (2d Cir. 1980).  Through various sources and  means, the government has accumulated millions of pages of documents as well as audio and video materials and has transferred them onto twenty-seven CDS and an external, Concordance hard drive.  The Concordance database alone has almost 130 gigabytes of electronic data.  The discovery was produced by numerous banks, accounting and financial consulting firms, law firms, market analysts, shareholders, government agencies and others.  And the discovery is not yet complete.

Over the past four months, the defense has attempted to sort through and make sense of the massive discovery.  As recounted in the attached Declaration of attorney Maria Neyra, the task has proved to be overwhelming.  For that reason, defendant Levis seeks the same remedy authorized by courts in this District in complicated, document-intensive cases, including securities fraud cases.  Namely, defendant Levis requests an Order compelling the government to particularize its discovery by providing timely disclosure of: A) a witness list;

B) an exhibit list; and C) 404(b) evidence.  *See, e.g.*, *United States v. Vilar*, 530 F. Supp. 2d

616, 640-41 (S.D.N.Y. 2008) (granting defense request in securities fraud case for early

disclosure of witness list, exhibit list, and 404(b) notice).  Because of the nature, scope and

volume of this case, the defendant respectfully requests that such disclosures be made no

later than ninety days prior to the commencement of trial.

## II.    BACKGROUND

On March 4, 2008, Levis was charged as the lone defendant in a complex securities

and wire fraud case.    The Indictment is thirty-one pages long and contains sixty-six

paragraphs of factual and statutory allegations.  The fraudulent scheme alleged spans more

than five years (2000 through April 2005), and involves an unknown number of potential

witnesses and multiple jurisdictions, including the Commonwealth of Puerto Rico, Louisiana,

Washington, D.C., and New York.

According to the government, Levis, along with others, "corrupted the process" by

which Doral accounted for and reported certain non-cash assets known as interest-only strips

or "IOs."  The general allegations describe how the process involved numerous SEC filings,

on both a quarterly and annual basis, announcements and press releases, Doral's internal

books and accounting records, minutes from the Board of Directors and various committees,

external auditing records and valuation reports, as well as all communications, whether by

telephone, e-mail, instant messages, or face-to-face meetings, with potential investors,

3

individual and institutional shareholders, shareholder representatives, analysts, accountants and financial consultants.

The Indictment against Mr. Levis was returned approximately thirty-three months after the commencement of an SEC investigation. Since that time, the government has received substantial assistance not only from the SEC's Fraud Task Force but from the FBI, the Federal Reserve, the law firm of Latham & Watkins, retained by Doral to conduct its own internal investigation, and First Manhattan Consulting Group, Doral's financial consultant. This assistance has resulted in massive amounts of electronic data.

In that regard, the government has sought to comply with its discovery obligations in this case by simply transferring the mountains of paper, audio and video materials onto twenty-seven CDS and an external Concordance hard drive. The Concordance database alone has almost 130 gigabytes of electronic data. The discovery process is not complete; according to the government, at least eight more CDs, 9,400 hard copy pages, e-mails, and Lotus notes are still forthcoming. According to a rough estimate provided by a computer specialist working with the defense team, the electronic data provided thus far amounts to more than 2.1 million pages of documents, including Doral's internal books, records and SEC filings for 2000 through April 2005, outside accountant work papers, law firm internal investigation files, analyst reports, transcripts, and thousands of e-mails and instant messages.

Because the discovery is so voluminous, Mr. Levis's lead counsel, the law firm of BLACK, SREBNICK, KORNSPAN, AND STUMPF, has assembled and assigned a team of lawyers, paralegals, and outside computer specialists the sole task of organizing and reviewing the paper and electronic discovery.  This document review team includes:

1.  Two lawyers who are devoting nearly 100% of their time to document review and analysis, and a third lawyer who is spending a substantial portion of his time in that regard;

2.  Two paralegals who are devoting 100% of their time to organizing the discovery and creating witness files;

3.  A financial analyst whose job is to review the complicated financials, including internal and external audit work papers and analyst reports; and

4.  An outside computer firm, Forensis, who has assigned three representatives to help defense counsel convert the electronic media (CDs) and Concordance database to a more manageable, accessible, and searchable format.

*See* **EXHIBIT A:** Declaration of Maria Neyra, Esq.

Despite the diligence of the assembled team, the task has proved to be overwhelming. Defense counsel have already reviewed all of the hard copy discovery that has been produced but only a small fraction of the more than 2.1 million pages of electronic data.  To be sure, it would take longer than five years (working 365 days per year) for even this large assembled team to review and carefully analyze all of the electronic data.  At this point, not all of the computer data is even in a form that is accessible to defense counsel.  Although the defense team has run random searches of the electronic data, there is simply no way to assure

that defense counsel have identified all or even a large percentage of the relevant documents that the government intends to rely upon at trial. The government has apparently produced, without discrimination, materials they accumulated from various sources during almost three years, regardless of whether the materials are either relevant to the current prosecution or will be offered in evidence at trial. In attorney Neyra's opinion, "the defense team for Mr. Levis cannot adequately prepare for trial without greater particularization of the government's discovery sufficiently in advance of trial." **EXHIBIT A**, p. 4, ¶15.

In addition, on June 12, 2008, defense counsel sent a letter to the government formally demanding notice under Fed.R.Evid. 404(b) and expert witness summaries under Fed.R.Crim.P. 16(a)(1)(G). *See* **EXHIBIT B:** Letter, June 12, 2008. The government has agreed to provide 404(b) information thirty days prior to trial and has indicated, albeit subject to change, that they do not anticipate calling any experts. The defense needs early notice of any Rule 404(b) evidence so that the defense can properly research, investigate and defend against any other alleged "bad acts." As demonstrated below, the Court should grant the defendant's motion to compel in order to assure that the defendant and counsel can properly prepare for trial and that the case proceed in an orderly and efficient manner.

### III.    THE DEFENDANT'S REQUESTS

#### A.    Production of a Witness List

A court "has the discretion to compel pretrial disclosure of the Government's witnesses, at least where the defendant makes 'a specific showing that disclosure [is] both

6

material to the preparation of his defense and reasonable in light of the circumstances surrounding his case.'" *Vilar*, 530 F. Supp. 2d at 637 (quoting *United States v. Cannone*, 528 F.2d 296, 301 (2d Cir. 1975)). Indeed, "[t]he general discretion of district courts to compel the government to identify its witnesses is acknowledged widely . . . ." *Cannone*, 528 F.2d at 299. Reversing a previous panel decision to the contrary, the *en banc* Ninth Circuit in *United States v. Grace*, 526 F.3d 499 (9th Cir. 2008) (*en banc*), recently affirmed the power of district courts to require the government to produce pretrial witness lists of even nonexpert witnesses, emphasizing "the logic and fairness of requiring the government to produce a pretrial witness list of both experts and nonexperts (subject to appropriate conditions) so that the parties – and the district court – may be adequately prepared for trial." *Grace*, 526 F.3d at 512; *see also United States v. Bejasa*, 904 F.2d 137, 139-40 (2d Cir. 1990); *United States v. John Bernard Indus., Inc.*, 589 F.2d 1353, 1358 (8th Cir. 1979); *United States v. Chaplinski*, 579 F.2d 373, 375 (5th Cir. 1978); *United States v. Sclamo*, 578 F.2d 888, 890 (1st Cir. 1978); *United States v. Anderson*, 481 F.2d 685, 693 (4th Cir. 1973), *aff'd*, 417 U.S. 211 (1974); *United States v. Price*, 448 F. Supp. 503, 507-18 (D. Colo. 1978).

The court in *Vilar* held that the defendants' need to prepare for trial and to litigate potential legal issues satisfies the defendants' burden and "outweighs the Government's purported interests in efficiency and in preventing Defendants from obtaining an inequitable preview of the 'expected testimony or evidence.'" *Vilar*, 530 F. Supp. 2d at 637. The *Vilar* court then examined the defendants' request under the factors relied upon by the court in

*Turkish*, 458 F. Supp. at 881, in granting a similar request. *Vilar*, 530 F. Supp. 2d at 637-38.

The factors included:

> 1) Whether the alleged offense was a crime of violence?
>
> 2) Whether the defendants had ever been arrested or convicted of crimes of violence?
>
> 3) Whether the evidence largely consisted of testimony relating to documents that "by their nature are not easily altered"?
>
> 4) Whether there is a "realistic" possibility that supplying the witnesses' names would "increase the likelihood" that the government's witnesses would not appear at trial?
>
> 5) Whether the indictment alleged offenses spanning an extended period of time, "making preparation of the defendants' defense complex and difficult"?
>
> 6) Whether the defendants had limited funds with which to investigate and prepare their defense?

*Id.* The court in *Vilar* then held that in the complex securities fraud case before it, the first five of the six factors supported the defendants, and therefore, the equities "weigh[ed] strongly in favor of directing the Government to produce a witness list." *Id.* at 638.

This Court should reach a similar conclusion in this equally complex securities fraud case. As in *Vilar*, the government will not be prejudiced by having to at least specify the witnesses it intends (or does not intend) to call at trial, since the case does not involve violence or potential threats to witnesses or the destruction of evidence. Nor has the defendant been arrested or convicted of any violent crimes. The cloak of secrecy which normally shields the government from revealing its case before trial, therefore, is not

8

necessary here.  The defendant and his counsel should not be forced to waste time and resources chasing shadows or pursuing the hundreds of ***possible*** witnesses – especially those who the government does ***not*** intend to call in its case-in-chief at trial.

Other courts have exercised their discretion to order the production of witness lists under analogous situations.  For example, the court in *United States v. Madeoy*, 652 F. Supp. 371, 375 (D.D.C. 1987), ordered the government to provide a witness list in a massive RICO case, involving 120 overt acts and allegations of false statements, wire fraud, bribery and interstate transportation of property obtained through fraud. The court recognized that the case involved a "very large number of witnesses and documents" and that there existed an "extreme lack of likelihood of witness intimidation."  *Madeoy*, 652 F. Supp. at 376.  The court found that production of the list would assist in "preparation for trial, effective cross-examination" and the "expediency of trial."  *Id.* at 375.

Similarly, the court in *United States v. Nachamie*, 91 F. Supp. 2d 565, 580 (S.D.N.Y. 2000), also ordered the government to produce a witness list prior to trial.  In that case, the government charged the defendants with a conspiracy to commit Medicare fraud.  *Id.* at 567. The government produced over 200,000 pages of discovery regarding 2,000 Medicaid claims. *Id.* at 571.  The court found that the government's promise to provide summary charts, among other things, forty-five days prior to the trial was ***inadequate*** to enable the defendants to prepare for trial and avoid surprise.  *Id.* at 571-72.  The court's analysis considered factors including: (a) the number of co-conspirators; (b) the duration and breadth of the alleged

conspiracy; (c) whether the government otherwise had provided adequate notice of the particulars; (d) the volume of pretrial disclosure; (e) the potential danger to co-conspirators who were now cooperating with the government; and (f) the potential harm to the government's investigation. *Id.* at 572-73; *see also United States v. Rosenthal*, No. 91 Cr. 412, 1991 WL 267767, at *4-5 (S.D.N.Y. Dec. 3, 1991) (ordering witness list where charges were complex, case would take a month to try, documentary evidence was voluminous and the pool of potential witnesses was large); *United States v. Stroop*, 121 F.R.D. 269, 274-75 (E.D.N.C. 1988) (ordering witness list where a particularized need was shown and there was no apparent risk to witnesses); *United States v. Shoher*, 555 F. Supp. 346, 354 (S.D.N.Y. 1983) (particularized need for witness list shown where alleged offense took place over seventeen month period); *Turkish*, 458 F. Supp. at 881 (particularized need shown where alleged offense took place over fifteen month period and government identified 25,000 relevant documents).

The factors guiding the discretion of the courts in these cases all apply in this case. The case is enormous and unwieldy; the government has had a significant advantage in terms of investigating the case; and the discovery (both documentary and electronic) is too voluminous to narrow the case. Conversely, the traditional reason why the government is not required to provide such discovery – the fear that witnesses will be harassed or intimidated, *see United States v. Feola*, 651 F. Supp. 1068, 1138 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989) – is ***not*** present here.

In *Vilar*, the court ordered the government to produce its witness list sixty days before trial. *Vilar*, 530 F. Supp. 2d at 639. In *Grace*, the *en banc* Ninth Circuit upheld a district court ruling requiring the government to disclose its ***final*** witness list a ***full year*** before trial in a complex environmental prosecution. *See Grace*, 526 F.3d at 509. The defendant herein seeks such notice only ninety days before trial – a reasonable time given the nature, scope, and size of this case.

### B.    Production of an Exhibit List

Rule 16(a)(1)(E) requires the government to provide three categories of documents that it "intends to use ... in its case-in-chief at trial." The "overwhelming majority" of district courts in this Circuit "in accord with Second Circuit authority, favor the view that 'it is within a district court's authority to direct the Government to identify [prior to trial] the documents it intends to rely on in its case in chief.'" *Vilar*, 530 F. Supp. 2d at 639 (quoting *United States v. Giffin*, 379 F. Supp. 2d 337, 344 (S.D.N.Y. 2004) ("[B]ased on the policy concerns of Rule 16 and principles of fairness, it is within a district court's authority to direct the Government to identify the documents it intends to rely on in its case in chief." (citing *United States v. Upton*, 856 F. Supp. 727, 748 (E.D.N.Y. 1994), and *Turkish*, 458 F. Supp. at 882))). Requiring the government to produce an exhibit list pre-trial furthers "the fair and efficient administration of [a] case," because it is likely "that the Government will rely to a significant extent on only a portion of those documents at trial." *Vilar*, 530 F. Supp. 2d at 640. Therefore, the Court in *Vilar* found that "pre-trial disclosure of an exhibit list best

11

serves Defendants' right to a fair trial, and is likely to aid in the orderly presentation of the Government's and the Defendants' respective cases at trial." *Id.*

Numerous courts have granted similar requests in complex, white collar prosecutions involving voluminous discovery. In *Turkish*, the defendant sought "a direction to the government to indicate which of the approximately 25,000 documents relating to this case in the government's possession it intends to use at trial, rather than 'burying the defendant in paper' by merely generally making all of the documents available to defendants." *Turkish*, 458 F. Supp. at 882. The court granted the motion under the authority of Rule 16. *Id.*

In *United States v. Poindexter*, 727 F. Supp. 1470, 1472 (D.D.C. 1989), when the government produced over 300,000 documents in discovery, the defendant argued that the government's Rule 16 obligations required more than to merely "identify several thousand pages, any of which it 'may' rely on at trial." *Poindexter*, 727 F. Supp. at 1484. The court agreed, holding that "[t]his broad brush approach . . . is not sufficient to meet [the government's] obligations" under Rule 16. *Id.* The court ruled that basic fairness required the government to, within thirty days of its order:

> identify with greater specificity those among these thousands of documents in the financial, calendar, and diary areas that it intends to use at trial. This notification will not prevent the government from later introducing other documents from these materials on a limited scale, but it will give the defendant some notice as to which among the thousands of documents are likely to be part of the government's case-in-chief.

*Id.* (citing *Turkish*, 458 F. Supp. at 882).  As in *Turkish*, the court further ordered the government to "identify all documents on which a witness will rely or to which he will refer."  *Id.*

Relying on *Turkish*, *Poindexter* and *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987),[1] the court in *Upton* also required early disclosure of the government's exhibit list. *Upton*, 856 F. Supp. at 747-48.  The defendants in *Upton* were charged with falsifying airplane maintenance records for Eastern Airlines.  *Id.* at 773.  In discovery, the government produced "thousands of pieces of paper."  *Id.* at 747.  However, of those "thousands" of pages, the indictment only put the defendants on notice of a handful which the government actually claimed were "falsified."  *Id.*  The court ordered the government to specifically identify the falsified records:

> The *purpose* of requiring the government to identify which documents it will rely upon at trial in a situation such as this – where there are thousands of documents – is to allow the defendant to adequately prepare his or her defense.  General familiarity with the nature of the documents, as in this case, will not allow defendants to do that if they are not informed which documents include the allegedly falsified maintenance information and which documents the government witnesses will refer to or rely upon.

---

[1] The court's citation to *Bortnovsky* is significant because the *Bortnovsky* court recognized how the government's failure to specify which documents are truly relevant among thousands of documents can lead to reversible error.  *Bortnovsky*, 820 F.2d at 573-74.

13

*Id.* at 748; *see also United States v. Chalmers*, 474 F. Supp. 2d 555, 573 (S.D.N.Y. 2007) (directing the government to disclose an exhibit list prior to trial based, in part, on "the large volume of documents produced by the Government thus far").[2]

For the same reasons this Court should compel a pre-trial witness list, the Court should compel a pre-trial exhibit list. The same factors that compelled the courts in *Vilar*, *Turkish*, *Poindexter*, *Upton*, and *Chalmers* to do so apply with equal, if not greater force here. As in *Vilar*, there can be no dispute "that the universe of documents and computer data currently produced far exceeds the quantity of information at issue in *Turkish*." *Vilar*, 530 F. Supp. 2d at 639, n.19. Accordingly, the government should be compelled to produce an exhibit list ninety days before trial.

---

[2] Another court addressing this issue exercised its discretion in a somewhat different way. In *United States v. McDade*, No. 92-249, 1992 WL 382351, at *2 (E.D. Pa. Dec. 11, 1992), the court declined to order the government to specify in advance which documents it intended to use but, instead, ordered the government to identify which "discrete parcels of material that it does *not* plan to use at trial." *Id.* at *2 (emphasis added.)

> What I am directing is that, to continue with the trite, bucolic metaphor, if the government does in fact know that of the, say, 27 empirical haystacks which it has forked over to the defense, there are 11 haystacks, for example, which the government views as being so far afield from the focus of the trial that it does not intend to use them, then the cause of speedy and efficient justice would be furthered by the government's telling the defense about those 11 haystacks which contain no needles.

*Id.; see also United States v. McDade*, 827 F. Supp. 1153, 1188 n.30 (E.D. Pa. 1993) (referring to the court's unpublished discovery order concerning the identification of irrelevant material).

14

### C.    **Specific Notice of Rule 404(b) Evidence**

In 1991, Rule 404(b) was amended to specifically require the government to provide "reasonable notice in advance of trial" of any evidence that it intended to introduce under the rule. The amendment speaks in mandatory terms: "[U]pon request by the accused, the prosecution in a criminal case *shall* provide reasonable notice *in advance of trial*, or during trial if the court excuses pretrial notice on good cause shown, of *the general nature of any such evidence it intends to introduce at trial*." Fed.R.Evid. 404(b) (emphasis added). The purpose of the amendment was to "protect the defendant by reducing surprise." *United States v. Perez-Tosta*, 36 F.3d 1552, 1561 (11th Cir. 1994). Moreover, the disclosure requirement applies "regardless of how [the government] intends to use the extrinsic act evidence at trial." *See United States v. Carrasco*, 381 F.3d 1237, 1240 (11th Cir. 2004) (citation omitted). Requiring the defendant to guess as to what piece of evidence the government could introduce under Rule 404(b) is precisely what the 1991 amendment was intended to prevent - "trial by ambush." The defendant could be severely prejudiced if he does not have enough time to examine, investigate and refute allegations of "other crimes." *See generally United States v. Baum*, 482 F.2d 1325, 1330-32 (2d Cir. 1973) (reversing conviction for possession of stolen goods where a pretrial motion to reveal the identity of a government witness was denied and the witness testified at trial that defendant previously had received stolen goods unrelated to possession of the particular goods as set forth in the indictment).

15

The government cannot satisfy its disclosure obligation by claiming that the required "notice" can somehow be found in the mountain of discovery. The Second Circuit in *United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988), explored this problem. In that case, the defendant, an alleged member of "the Lucchese Crime Family," was charged with RICO conspiracy and numerous predicate acts of extortion and unlawful payments to unions. *Id.* at 1153. Davidoff requested that the district court order the government to specify all acts of extortion it intended to introduce at trial, but the district court denied the motion. *Id.* The Second Circuit reversed Davidoff's conviction, holding that in light of the massive nature of the case, "it is simply unrealistic to think that a defendant preparing to meet charges of extorting funds from one company had a fair opportunity to defend against allegations of extortions against unrelated companies, ***allegations not made prior to trial***." *Id.* at 1154 (emphasis added).

District courts, of course, have discretion in determining ***when*** the pre-trial disclosures should be made. *See Vilar*, 530 F. Supp. 2d at 640; *Nachamie*, 91 F. Supp. 2d at 577. Where, as here, the physical "threat to the safety of prospective witnesses" is not an issue, it is appropriate to order the disclosure earlier rather than later. *Vilar*, 530 F. Supp. 2d at 640-41 (instead of ordering the disclosure by the usual two to three weeks before trial, ordering the disclosure "not less than 60 days prior to the commencement of trial," absent a specific showing of danger to a witness). Given that the government has been investigating

16

this case for several years, it should have no problem in providing the requested information ninety days prior to trial.

**<u>CONCLUSION</u>**

For the foregoing reasons, defendant Mario S. Levis respectfully requests that the Court compel the government to provide him with the items identified above not later than ninety (90) days prior to the commencement of trial.

Respectfully submitted,

/s  Roy Black
ROY BLACK, ESQ.
(FL Bar No. 126088)
HOWARD M. SREBNICK, ESQ.
(FL Bar No. 919063)
MARIA D. NEYRA, ESQ.
(FL Bar No. 074233)
Black, Srebnick, Kornspan & Stumpf, P.A.
201 South Biscayne Blvd., Suite 1300
Miami, Florida 33131
Tele: (305) 371-6421
Fax: (305) 358-2006
rblack@royblack.com

*Attorneys for Defendant Levis*

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | )    **CRIMINAL NO. 08-CRIM-181** |
| | ) |
| MARIO S. LEVIS, | ) |
| a/k/a "Sammy Levis," | ) |
| | ) |
| *Defendant.* | ) |
| _____ | ) |

## **DECLARATION OF MARIA D. NEYRA, ESQ.**

Maria D. Neyra hereby declares under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following is true and correct to the best of her knowledge and belief:

1.  I am a partner with the law firm of Black, Srebnick, Kornspan & Stumpf, P.A. ("BSKS"), in Miami, Florida.  I am admitted to practice in the State of Florida.  I am a member in good standing of the Florida Bar, and have been admitted to practice before various district courts.

2.  Roy Black and Howard Srebnick, named partners at BSKS, are the lead trial lawyers for Mario S. Levis, the defendant in the above-styled action.

3.  This declaration is being filed in support of Mr. Levis's omnibus motion to compel the government to provide timely disclosure of a witness list, exhibit list and Rule 404(b) evidence.

4.  In early March 2008, Mr. Levis was charged as the lone defendant in this

complex, securities and wire fraud case. The Indictment is more than 30 pages long and contains 66 paragraphs of factual and statutory allegations. The fraudulent scheme alleged spans more than five years (2000 through April 2005) and involves multiple jurisdictions, including the Commonwealth of Puerto Rico, Louisiana, Washington, D.C., and New York.

5.     According to the government, Mr. Levis, along with others, "corrupted the process" by which Doral Financial Corporation ("Doral"), a publicly traded mortgage lender, accounted for and reported certain non-cash assets known as interest-only strips or IOs.

6.     The general allegations as to the process require the review and analysis of numerous SEC filings, press releases, Doral's internal books and records, minutes from the Board of Directors and various committees, external accounting records and valuation reports, as well as all communications, whether by telephone, e-mail, instant messages, or face-to-face meetings, with potential investors, individual and institutional shareholders, shareholder representatives, analysts, and financial consultants.

7.     Since the return of the Indictment, I have worked virtually full-time (averaging more than 50 hours per week) on Mr. Levis's case alone. My responsibility has been to organize, review and analyze the government's discovery, and manage a team of lawyers, paralegals, and computer specialist assisting me.

8.     I, along with members of our team, have been in regular communication with prosecutors, primarily Special Assistant United States Attorney Jason Anthony, to coordinate the receipt of the electronic discovery.

2

9.      The government's discovery thus far has included mountains of hard copy documents, electronic data on 27 CDs and an external hard drive that contains a native Concordance database. The Concordance database alone holds nearly 130 gigabytes of information. The discovery process is not complete; according to the government, at least eight more CDs, 9,400 hard copy pages, Lotus notes, and e-mails are forthcoming.

10.     According to a rough estimate provided by the computer specialists working with the defense team, the electronic data provided thus far amounts to more than 2.1 million pages of documents, including internal bank books and records, SEC filings, outside accountant work papers, law firm internal investigator files, analyst reports, and thousands of e-mails and instant messages.

11.     Because the discovery is so voluminous, my law firm has assembled and assigned a team of lawyers, paralegals and an outside computer firm  for the sole purpose of organizing and reviewing the paper discovery and electronic data. This document review team includes:

> a.      Two lawyers, including myself, who are devoting nearly 100% of their time to the organization, review and analysis of the discovery, and a third lawyer who is spending a substantial portion of his time in that regard;
>
> b.      Two paralegals who are devoting 100% of their time to organizing the discovery and creating witness files;
>
> c.      A financial analyst whose job it is to review the complicated financials, including internal and external audit work papers, analyst reports and charts; and

3

      d.    An outside computer firm, Forensis, who has assigned three specialists to help the defense team convert the electronic media (CDs) and Concordance database to a more manageable, searchable and easily retrievable format.

12.    Despite the diligence of the assembled team, the task has proven to be overwhelming. Defense counsel have already reviewed all of the hard copy discovery that has been produced, but only a small fraction of the more than 2.1 million pages of electronic data. To be sure, it would take longer than five years (working 365 days per year) for even this large assembled team to review and carefully analyze all of the electronic data. At this point, not all of the electronic data is even in a form that is accessible to defense counsel. I have been working with the outside computer firm, Forensis, as well as with AUSA Jason Anthony, in an effort to make the data accessible and more readily searchable.

13.    Although we have run random searches on the accessible data, there is simply no way to assure that defense counsel have identified all or even a large percentage of the relevant documents that the government intends to rely upon at trial.

14.    The government has apparently produced the *entire universe* of materials accumulated from the various sources during the last three years, regardless of whether the materials are either relevant to the current prosecution or will be offered in evidence at trial.

15.    In my estimation, the defense team for Mr. Levis cannot adequately prepare for trial without greater particularization of the government's discovery sufficiently in advance of trial.

16.    To that end, I have transmitted a request by e-mail to the prosecutors for a

4

witness list and an exhibit list. The government has agreed to provide this information just 30 days prior to trial.

17.    Moreover, on June 12, 2008, I sent a letter to the government formally demanding notice under Fed.R.Evid. 404(b) and expert witness summaries under Fed.R.Crim.P. 16(a)(1)(G). The government likewise agreed to provide 404(b) notice 30 days prior to trial and has indicated that, albeit subject to change, they do not at this time anticipate calling any expert witnesses.

18.    In my view, the only way for the defense to be able to adequately manage the discovery and effectively prepare for trial is for the government to provide greater particularization, sufficiently in advance of trial, of the documents and witnesses it intends to rely upon at trial. Due to the complexity and volume of discovery and potential witnesses involved, the defense believes that such disclosure should be made no later than 90 days prior to the commencement of trial. I believe this to be reasonable and in the best interest of the parties in order to proceed to trial in an orderly and efficient manner.

19.    Moreover, the defense needs early notice of any Rule 404(b) evidence so that the defense can properly research, investigate and defend against any other alleged "bad acts."

5

Accordingly, the defense respectfully seeks an Order granting the relief requested in the attached motion.

Dated this 17th day of July, 2008.

_Maria Neyra_
MARIA D. NEYRA, ESQ.

# Exhibit B

ROY BLACK
HOWARD M. SREBNICK
SCOTT A. KORNSPAN
LARRY A. STUMPF
MARIA NEYRA
JACKIE PERCZEK
MARK A.J. SHAPIRO
JARED LOPEZ



**BLACK
SREBNICK
KORNSPAN
& STUMPF**
══ P.A. ══

CHRISTINE M. NG
JESSICA FONSECA-NADER
KATHLEEN P. PHILLIPS
AARON ANTHON
MARCOS BEATON, JR.
MATTHEW P. O'BRIEN

E-Mail: *MNeyra@RoyBlack.com*

June 12, 2008

Diane Gujarati, Esq.
Christopher Garcia, Esq.
Jason Anthony, Esq.
Assistant United States Attorneys
United States Attorney's Office
The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

  Re: United States v. Mario S. Levis
    Case No. 08-CR-181 (TPG)

Dear Counsel:

  Pursuant to Fed.R.Evid. 404(b), we hereby request reasonable notice in advance of trial of any evidence of "other crimes, wrongs, or acts" that the government intends to introduce at trial.

  Pursuant to Fed.R.Crim.P. 16(a)(1)(G), we request a "written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial."

  Thank you for your attention to this matter.

    Very truly yours,

    ROY BLACK
    HOWARD M. SREBNICK