# BLACK SREBNICK KORNSPAN & STUMPF P.A.

ROY BLACK
HOWARD M. SREBNICK
SCOTT A. KORNSPAN
LARRY A. STUMPF
MARIA NEYRA
JACKIE PERCZEK
MARK A.J. SHAPIRO
JARED LOPEZ

JESSICA FONSECA-NADER
KATHLEEN P. PHILLIPS
AARON ANTHON
MARCOS BEATON, JR.
MATTHEW P. O'BRIEN
JENIFER J. SOULIKIAS
NOAH FOX

E-Mail: RBlack@RoyBlack.com

January 7, 2010

**Via Hand Delivery**
Honorable Thomas P. Griesa
United States District Judge
Southern District of New York
500 Pearl Street, Room 1630
Courtroom 26B
New York, NY 10007-1312

      RE:   United States v. Mario S. Levis,
                  Case No. 08-Cr-191 (TPG)

Dear Judge Griesa:

     I am writing to request a continuance of the March 22, 2010 trial date in light of just receiving 10 DVD's containing an estimated **800,000 pages** of additional discovery. I say "estimated," because my office cannot actually access all of the pages, as over half of the DVDs are "corrupted." No one from the government has given us a page count, but based on the amount of data that appear on the DVDs, our computer consultant has estimated the number of pages.

     The estimated 800,000 pages have apparently been in the possession of the SEC for several years, but were only produced to the defense by the prosecution team between December 22, 2009 and January 5, 2010, **seven months after the prosecution team alerted the defense of their existence.** The primary sources of the estimated 800,000 pages are two financial institutions – First Bank and R&G Financial – whose transactions with Mr. Levis and Doral Financial Corporation ("Doral") are the subject of the accounting fraud alleged in the indictment. Also contained within the First Bank and R&G production are audit

DEFENDANT'S EXHIBIT Levis 129

Honorable Judge Griesa
January 7, 2010
Page 2

work papers from PricewaterhouseCoopers ("PWC"), Doral's external auditors.

The cover letters accompanying the DVDs indicated that production was being made by the prosecution team pursuant to Rule 16(a), which requires that the government provide all documents "material to the defendant's case" see Fed.R.Crim.P. 16(a)(1)(E)(I), which the government has a continuing obligation to do so. See Fed.R.Crim.P. 16(c). Having finally received the estimated 800,000 pages, it is incumbent upon my office to now review them, together with the client and our experts/financial consultants, in order to make effective use of these documents at trial.

### Significance of the Estimated 800,000 Pages of Additional Discovery

Mr. Levis is charged with securities and wire fraud. The government alleges that from 2000 - August 2005, Mr. Levis participated in a complicated accounting fraud scheme involving hundreds of millions of dollars of Doral's assets. The government will present evidence that Mr. Levis, as the former treasurer and executive vice president of Doral, sold pools of non-conforming loans, primarily to First Bank and R&G, which generated an asset for Doral based on a future stream of interest income, known as "interest-only strips." Doral represented to the public that the interest-only strips were worth approximately $878 million.

The government accuses Mr. Levis of corrupting the process by which the interest-only strips were internally valued, manipulating the external valuator's analysis of the interest-only strips, and misrepresenting to the investing public the value and characteristics of these assets. For example, the government will offer evidence of a series of emails to analysts and Doral's shareholders, in which Mr. Levis represented that all of the sales contracts contained a "cap" on the net yield that Doral owed to the loan pool investors (e.g., First Bank and R&G). The government contends that those emails falsely suggested that there was no risk that the future stream of interest income would result in a negative cash flow for Doral. As a result of Mr. Levis' alleged scheme, the government claims that Doral overvalued the interest-only strips by approximately $600 million, and the investing public was thereby defrauded in upwards of **$4 billion**.

Mr. Levis denies any corruption of the valuation process and denies having knowingly made any material misrepresentations regarding the valuations and characteristics of these assets. In order to prove the accuracy of the internal and external valuations and the *bona fides* of the representations made by Mr. Levis, the defense intends to present to the jury the documents that memorialize the

terms and agreements between Doral and the counter parties, including First Bank and R&G. Toward that end, the defense has reviewed a substantial amount of the Doral files previously produced by the government in discovery, and the defense has located many documents that corroborate Mr. Levis' genuine belief that there was no risk that the future stream of interest income would result in a negative cash flow for Doral. However, Doral's files are woefully incomplete. Many more documents memorializing the understanding of Mr. Levis as to the (lack of) risk to Doral of a negative cash flow are necessarily contained in the files of First Bank and R&G, with whom Mr. Levis negotiated and executed the loan pool sales contracts.

The defense also intends to rely upon the audit work papers of PricewaterhouseCoopers ("PWC") to show that the external auditors approved the internal and external valuations. Furthermore, to the extent that the government calls any witnesses associated with First Bank, R&G and/or PWC, which the prosecution team has reserved the right to do, the defense intends to confront these witnesses with documents from their respective institutions related to the loan pool transactions and their valuations.

So as not to further reveal defense theories and strategies, I request permission from the Court to submit, *in camera*, a memorandum from an expert/consultant as to why the files of First Bank and R&G are critical to the defense.[1] The expert/consultant, a former Senior Economist with the Federal Reserve Bank who holds a doctorate in the area of Finance and is a graduate-level professor of securities, has spent nearly eight months reviewing and analyzing the discovery produced thus far. The additional data is needed in order for him to accurately complete his forensic analysis of Doral's interest-only strips, particularly as Doral's loan sales to First Bank and R&G account for more than 60% of Doral's variable interest-only portfolio.

The prosecution team itself must have recognized the significance of the First Bank and R&G documents back in May 2009, when it alerted the defense that the SEC was in possession of these documents and that the prosecution team

---

[1] Because the government has advised that it objects to an *in camera* submission, I await further instruction from the Court as to the submission proposed.

Black, Srebnick, Kornspan & Stumpf, P.A.

Honorable Judge Griesa
January 7, 2010
Page 4

would be producing them to the defense.[2] By May 2009, the government had already produced over 2 million pages of other discovery. The prosecution team advised the defense that there were approximately 54,300 additional "documents," from First Bank and R&G, but the prosecution team could not estimate the number of pages, apparently because no one from the prosecution team had completed a page-by-page review of those documents. The prosecution team agreed to a continuance of the September 2009 trial date to allow for sufficient time to produce the documents. On August 19, 2009, this Court rescheduled the trial for March 22, 2010, expecting, I believe, that this last wave of additional discovery would be produced to the defense forthwith.

Between May and November 2009, the prosecution team produced, and the defense reviewed, approximately 188,754 pages of *other* additional discovery (not from First Bank or R&G). Throughout that time frame, the defense made regular requests for the remaining documents, i.e., those from First Bank and R&G.

Beginning December 22, 2009 and continuing until January 5, 2010, **seven months after the prosecution team alerted the defense that the documents would be produced,** the defense received from the prosecution team 10 DVDs which purport to include the 54,300 "documents."[3] Over the holidays, we began processing the electronic data and discovered a number of technical errors with at least five of the DVDs.[4] According to our computer consultants, the 54,300 "documents" on the DVDs actually amount to an estimated **800,000**

---

[2] One member of the prosecution team is an SEC attorney designated as a "special" assistant united states attorney for this case.

[3] On December 14, 2009, the prosecution team applied for, and the Court granted, a protective order restricting the dissemination of the First Bank and R&G documents. Although I did not object to the protective order, it was not sought at my request and I am unaware as to why the prosecution team took so long to apply for one.

[4] More specifically, as to DVD #36, there are physical defects which prevent us from extracting the images compressed in the Zip file. DVDs #34 and #39 appear to be corrupted as the files do not match the path name. We anticipate having to ask the prosecution team to reproduce these disks. Also, DVDs #35 and #37 list several dozen TIFF images that are missing. *See* Attachment A (compiling the number of pages based on the discernable data).

Black, Srebnick, Kornspan & Stumpf, P.A.

***pages***, but we cannot currently access the bulk of the documents due to the technical errors.[5]

As I advised the Court during our last status conference, I begin a civil trial next week, on January 11, 2010, and expect to be in that trial for at least three weeks. I had expected to receive all of this additional discovery months ago so it would not interfere with the civil trial. I did not know that the 54,300 "documents" would consist of an estimated 800,000 pages. As it now stands, I will have no time to review the estimated 800,000 pages before I must submit the defense's exhibit and witness lists, currently due on February 5, 2010, according to this Court's.

Even with the best efforts of the other lawyers in my firm, a meaningful review of an additional 800,000 pages will take many months. By my rough calculation, it would require over 1,000 attorney hours just to give each page a glance. Obviously, more time would be needed for a detailed review of the key documents with the client and prospective defense witnesses, including experts.

I conferred with the prosecution team, and they advise that they will object to any continuance of the trial date. They offered no explanation as to why they delayed production of the estimated 800,000 pages of discovery until now. Significantly, the government has been in possession of these documents for years. In May 2009, the prosecution team acknowledged their obligation to produce these documents, yet failed for seven months to produce them. It would be a violation of Rule 16, the Fifth Amendment right to Due Process and the Sixth Amendment right to counsel to force the defendant to trial without affording him, his counsel and his experts a meaningful opportunity to review the estimated 800,000 pages of additional discovery.

Accordingly, I am requesting that the trial currently scheduled for March 22, 2010, be continued until after the Court's Summer recess. I cannot propose a trial date at this time because I do not know how long it will take to access the estimated 800,000 pages given the technical errors that currently restrict access to the documents. Accordingly, I propose that the Court set a status conference in approximately 60 days, at which time I can update the Court on my review of

---

[5] The prosecution team also produced approximately 7,334 pages of documentation from Countrywide Financial Corporation, another institution that purchased loan pools that generated interest-only strips for Doral.

Black, Srebnick, Kornspan & Stumpf, P.A.

Honorable Judge Griesa
January 7, 2010
Page 6

the additional discovery and propose a realistic trial date.

Sincerely,

*Roy Black*

Roy Black

RB/gb

# ATTACHMENT A

| Disk ID | Pages Per Report |
|---|---|
| Disk 1 USAO #32 | 75,803 |
| Native files 2.5 gigabytes or approximately | 100,000 |
| Disk 2 USAO #33 | 93,812 |
| Disk 3* USAO #34 | 76,200 |
| Disk 4 USAO #35 | 68,681 |
| Disk 5* USAO #36 | 150,000 |
| Disk 6 USAO #37 | 93,000 |
| Disk 7 USAO #38 | 65,401 |
| Disk 8* USAO #39 | 70,557 |
| Disk 9 USAO # 43 - Federal Reserve | 960 |
| Disk 10 USAO # 44 - Countrywide Financial Corporation | 7,334 |

* Based on numbers reported in the discernible Zip files.

**Total: 801,748**

### DVD 35 & 37 Missing Tiff Images

| | |
|---|---|
| PWC-FBC-243490.TIF | PWC-FBC-256992.TIF |
| PWC-FBC-243491.TIF | PWC-FBC-257492.TIF |
| PWC-FBC-243492.TIF | PWC-FBC-257992.TIF |
| PWC-FBC-243493.TIF | PWC-FBC-258492.TIF |
| PWC-FBC-243993.TIF | PWC-FBC-258992.TIF |
| PWC-FBC-244493.TIF | PWC-FBC-259492.TIF |
| PWC-FBC-244993.TIF | PWC-FBC-259992.TIF |
| PWC-FBC-245493.TIF | PWC-FBC-260492.TIF |
| PWC-FBC-245993.TIF | PWC-FBC-260992.TIF |
| PWC-FBC-246493.TIF | PWC-FBC-261492.TIF |
| PWC-FBC-246993.TIF | PWC-FBC-261992.TIF |
| PWC-FBC-247493.TIF | PWC-FBC-262492.TIF |
| PWC-FBC-247993.TIF | PWC-FBC-262992.TIF |
| PWC-FBC-248493.TIF | PWC-FBC-263492.TIF |
| PWC-FBC-248993.TIF | PWC-FBC-263992.TIF |
| PWC-FBC-249493.TIF | PWC-FBC-264492.TIF |
| PWC-FBC-249993.TIF | PWC-FBC-264992.TIF |
| PWC-FBC-250492.TIF | PWC-FBC-265492.TIF |
| PWC-FBC-250992.TIF | PWC-FBC-265992.TIF |
| PWC-FBC-251492.TIF | PWC-FBC-266492.TIF |
| PWC-FBC-251992.TIF | PWC-FBC-266992.TIF |
| PWC-FBC-252492.TIF | PWC-FBC-267492.TIF |
| PWC-FBC-252992.TIF | PWC-FBC-267992.TIF |
| PWC-FBC-253492.TIF | PWC-FBC-268492.TIF |
| PWC-FBC-253992.TIF | PWC-FBC-268992.TIF |
| PWC-FBC-254492.TIF | PWC-FBC-269492.TIF |
| PWC-FBC-254992.TIF | PWC-FBC-269992.TIF |
| PWC-FBC-255492.TIF | PWC-FBC-270492.TIF |
| PWC-FBC-255992.TIF | PWC-FBC-270992.TIF |
| PWC-FBC-256492.TIF | |