UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **CASE NO. 08-CR-181 (TPG)(S)** |
| | ) | |
| MARIO S. LEVIS, | ) | |
| a/k/a "Sammy Levis," | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

---

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MISTRIAL MOTION**

---

ROY BLACK, ESQ.
(FL Bar No. 126088)
HOWARD SREBNICK, ESQ.
(FL Bar No. 919063)
MARIA D. NEYRA, ESQ.
(FL Bar No. 074233)
BLACK, SREBNICK, KORNSPAN
& STUMPF, P.A.
201 South Biscayne Boulevard
Suite 1300
Miami, Florida 33131
Phone (305) 371-6421
Fax (305) 358-2006
rblack@royblack.com

# TABLE OF CONTENTS

**Page**

I.      MISREPRESENTATIONS ALLEGED IN THE INDICTMENT . . . . . . . . . . . . . . . . . . 5

II.     CONSTITUTIONAL RIGHT TO PRESENT DEFENSES.. . . . . . . . . . . . . . . . . . . . . . . . 7

        A.      THE ESSENTIAL ELEMENTS OF THE CHARGES. . . . . . . . . . . . . . . . . . . . . 7

        B.      MATERIALITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        C.      FRAUDULENT INTENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.    ELEMENT OF MATERIALITY AND CRIMINAL INTENT. . . . . . . . . . . . . . . . . . . . 12

IV.     DEFENDANT'S THEORY OF DEFENSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V.      RIGHT TO CONFRONT THE EVIDENCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **CRIMINAL NO. 08-Cr-181** |
| | ) | |
| MARIO S. LEVIS, | ) | |
| a/k/a "Sammy Levis," | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

# DEFENDANT'S MEMORANDUM IN SUPPORT OF MISTRIAL MOTION

## Introduction

At the end of the day on April 20, 2010, the Court expressed reservations about the relevance of testimony concerning Doral's external "hedges" on potential rising interest rates.  Citing to portions of the Indictment where the government alleged that Mr. Levis falsely represented that there were "caps" embedded in the IO contracts themselves, the Court questioned whether the existence of hedges was a legal defense to the charges in the Indictment.  Counsel responded that the evidence was relevant to Mr. Levis's defense on two essential elements of all counts of the Indictment – materiality and fraudulent intent – as well as other specific allegations that were not limited to "embedded" caps.

Before counsel could complete and file a trial memorandum to support their arguments, on April 21, 2010, the Court – with no prior notice to the defense – instructed the jury that the "essence" of the indictment was "the allegation that all the loans sold had caps

embedded in the contracts." Trial Transcript, April 21, 2010, at p. 3000. The Court then told the jury that, for "your purposes right now" – i.e., just before Mr. Levis was about to present his defense – there were only three real issues for them to consider: (1) whether Mr. Levis made any representations "about caps being embedded in the contracts"; (2) whether those particular representations were "true or untrue"; and (3) whether Mr. Levis knew that the representations were false. *Id.* at 3001.

In addition, the Court told the jury that the evidence that they had already heard about hedges was not relevant: "... I advise you now that the issue of hedges is not relevant to those counts. ..." *Id.* The Court characterized the evidence the jury already heard about hedges as just something "the lawyers" went into and was nothing more than "background." *Id.* The Court then told the jury:

> Now I repeat as a matter of law in this case, I have ruled, I will reaffirm this to you when I instruct you, that the issue of hedges is totally irrelevant to these counts I'm talking about, whether they existed, whether they were successful, whether they were unsuccessful. The question is: Did the defendant make a representation about caps being embedded in the contracts significantly lower than the so-called WAC? Did he make that statement? Was that true or untrue? And if it was untrue, did he know it was untrue? And the question of truth is basically were there caps. Not whether there hedges but were there caps, and there is a difference as a matter of law.

*Id.* at p. 3001-02. The only relevance about hedges, the Court interpreted for the jury, was regarding the government's allegations that Mr. Levis had falsely stated that there were two independent evaluators. *Id.* at p. 3002. However, the Court reiterated that "the issue of hedges is not relevant to the counts that deal, that alleged false statements about caps." *Id.*

Finally, the Court suggested that defense counsels' cross-examinations had been giving the jury the "misimpression" that the hedges were relevant:

> And I wanted to speak to you about that this afternoon because you may have gained some misimpressions from the evidence not because any lawyer whatever was trying to give you misimpressions, but they were putting on evidence about all the circumstances, but I wanted to speak to you this afternoon so that it wouldn't come at the absolute end of the case as something coming fresh from me for the first time....

*Id.* at p. 3003.

After the jury was excused, defense counsel immediately moved for a mistrial because:

(1) The Court waited to make its prejudicial comments and instructions in response to defense counsel's cross-examination rather than during the direct examination of the witness when the subject was initiated by the government, thereby violating Mr. Levis' Sixth Amendment rights under the Confrontation Clause.

(2) The Court's comments and instructions violated Mr. Levis' Fifth Amendment right to due process and a fair trial.

(3) The Court's comments and instructions violated Mr. Levis' constitutional right to present a defense to *all* the essential elements of the charges – especially the ones *omitted* from the Court's instructions, *i.e.,* whether the representations about "embedded" caps were *materially* false and whether Mr. Levis acted with an *intent to defraud* and not just "knowingly."

3

(4) The Court's comments and instructions have, in effect, granted "summary judgment" to the government on all those elements of the offenses omitted from the Court's distillation of what it considered to be the "essence" of the case.  As counsel argued:

> When the court gave this instruction, fourthly, about these issues, it never once said that the government had to prove what the defendant's intent was, that it was willful, that it was knowing, it was not by accident, it was not in good faith.  The court didn't mention that the burden of proof is on behalf of the prosecution to prove those  accusations beyond a reasonable doubt.  That instruction, I believe, was totally one-sided and didn't give the defendant any of his rights under the law.

*Id.* at 3005.

(5) The Court violated the Federal Rules of Criminal Procedure by not allowing the defense to present proposed instructions to the Court or to have a jury instruction conference before the Court instructed the jury on the law.

(6) The Court, even when it acknowledged that the evidence might have some relevance to Popular Securities, suggested to the jury that any relevance was limited:

> The court has now undermined the evidence regarding our defense to Popular Securities by saying it is only partially available.  That misstates the burden of proof that the government has the -- the government has the burden of proof beyond a reasonable doubt.  That violates our right to a fair trial and due process of law.

4

(7) The Court's characterization of prior defense cross-examinations as giving the jury "misimpressions" both constituted an improper comment on how much weight the jury should give particular evidence and implied that counsel were not being candid with the jury.

*Id.* at pp. 3005-3006.

Mr. Levis submits that the Court's comments and instructions were based on a mis-reading of the Indictment, a mis-understanding of the essential elements of the charges and a mis-application of the Fifth and Sixth Amendments to the facts of this case.  Moreover, by commenting that the existence of hedges "is not a defense," *Id.* at 3001,  – *i.e.*, that Mr. Levis had no defense – the Court erroneously suggested that Mr. Levis has a burden to put on a defense.  This constitutes improper burden-shifting.

## I.    THE COURT SHOULD GRANT A MISTRIAL BECAUSE, CONTRARY TO THE COURT'S COMMENTS AND INSTRUCTIONS, THE MISREPRESENTATIONS ALLEGED IN THE INDICTMENT ARE NOT LIMITED TO THE "EMBEDDED CAPS" THEORY

As a threshold matter, the Court's distillation of the charges as being limited to the "embedded caps" allegations is contrary to the language in the Indictment itself.   In fact, the evidence about the existence of hedges – and evidence about Mr. Levis' beliefs about the purpose and effectiveness of those hedges – would *directly* refute the central allegation in the wire fraud charges, Counts 2-5.  In those counts, the Indictment alleges that Mr. Levis made "false and misleading representations regarding *safeguards that purported existed* to confirm and preserve the reported value of Doral's loss."  Indictment, p.26 (emphasis added).

5

While some (but not all) portions of the securities fraud charge in Count 1 allege that the misrepresentations involved the existence of "embedded caps" in the IO contracts themselves, the wire fraud charges in Counts 2-5 make no mention of "embedded caps" or even "caps" at all.  Instead, the government – and the indicting Grand Jury – more broadly framed the alleged misrepresentations as "regarding *safeguards that purported existed*...." Indictment, p. 26 (emphasis added).  Since hedges are "safeguards," the Court's exclusion of evidence concerning the hedges and the Court's instructions to the jury that the evidence that they already have heard about hedges is irrelevant have effectively barred Mr. Levis' defense to the charges – a bona fide defense in light of the language used in the Indictment itself.  Since hedges were plainly "safeguards," evidence of hedges is plainly relevant and Mr. Levis should have a constitutional right to refute the allegations in Counts 2-5 as they are pled in the Indictment.

Indeed, even in Count 1, not *all* of the allegations concerning misrepresentations are framed in terms of "embedded" caps.  In Subparagraphs (a) through (e) of ¶46 of the Indictment, the government has alleged five separate misrepresentations.  *See* Indictment, at pp. 22-23.  Only three of those five subparagraphs – (b), (c), and (d) – allege that the misrepresentations involved "embedded" caps.  Subparagraphs (a) and (e) do not.  Thus, subparagraph (a) alleges only that Mr. Levis falsely told a representative of an investor that Doral's IO portfolio "was protected by caps."  It does not allege whether those "caps" were internal (*i.e.*, "embedded") or external (*i.e.,* "hedges").  Similarly, subparagraph (e) charges

6

that Mr. Levis made misrepresentations "that there were caps on the pass-through rates owed to the Secondary Buyers." Again, there is no allegation about the caps being "embedded."

## II.   MR. LEVIS HAS, OR HAD, THE CONSTITUTIONAL RIGHT TO PRESENT DEFENSES TO *ALL* ESSENTIAL ELEMENTS OF THE CHARGES

The Due Process, Confrontation and Compulsory Process Clauses of the Fifth and Sixth Amendments guarantee the "right to present a defense, the right to present the defendant's version of the facts." *Washington v. Texas*, 388 U.S. 14, 19 (1967). A defendant exercises these rights through different means, among them is the right to call witnesses and present evidence in his own defense. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987); *Webb v. Texas,* 409 U.S. 95, 98 (1972). As discussed below, the evidence about hedges is relevant to two  essential elements of both the securities and wire fraud charges – "materiality" and fraudulent "intent."

### A.   The Essential Elements of the Charges

Securities fraud and wire fraud have two common elements - materiality and fraudulent intent. In order to prove securities fraud, the government must establish beyond a reasonable doubt that Mr. Levis, in connection with the purchase or sale of Doral securities: (1) made an untrue statement of a material fact or omitted to state a material fact which made what was said, under the circumstances, misleading; (2) acted willfully, knowingly and with the intent to defraud; and (3) knowingly used, or caused to be used, any means or instruments of transportation or communication in interstate commerce or the use of the mails in furtherance of the fraudulent conduct. *See generally* 1 Sand *et al.*, MODERN FEDERAL

JURY INSTRUCTIONS, Instruction 57–21 (citing *United States v. Gleason*, 616 F.2d 2 (2d Cir. 1979)).  In order to prove the wire fraud charges, the government must similarly prove beyond a reasonable doubt: (1) that Mr. Levis knowingly willfully and knowingly devised or participated in a scheme to defraud, or for obtaining money or property by means of false pretenses, representations or promises; (2) that the false pretenses, representations or promises related to a material fact; and (3) that Mr. Levis transmitted or caused to be transmitted by wire in interstate commerce some communication for the purpose of executing the scheme to defraud.  *See Porcelli v. United States*, 404 F.3d 157, 162 (2d Cir. 2005); *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004), *cert. denied,* 125 S. Ct. 1969 (2005); *United States v. Zichettello*, 208 F.3d 72, 105 (2d Cir. 2000).

The Court's comments and instructions have now all but eliminated these elements from the jury's consideration and the Court's exclusionary ruling has all but eliminated Mr. Levis' defense to these elements.

## B.    <u>Materiality</u>

A misrepresentation is not actionable unless it is material.  *See ECA Local 134 IBEW Joint Pentions Trust of Chicago*, 553 F.3d 187, 197 (2d Cir. 2009) (stating that in order to prove securities fraud, the plaintiff "must establish that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact[.]") (quotations omitted);  *Neder v. United States,*  527 U.S. 1, 25 (1999) ("[M]ateriality of

falsehood is an element of the mail fraud, *wire fraud*, and bank fraud statutes.") (emphasis added).

To meet the materiality requirement in securities fraud cases, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (quotations omitted). Materiality is not judged in the abstract, but in light of the surrounding circumstances. *See ECA*, 553 F.3d at 197 ("[T]he determination of whether an alleged misrepresentation is material necessarily depends on all relevant circumstances."); *cf. Landmen Partners, Inc. v. The Blackstone Group, L.P.*, 659 F. Supp. 2d 532, 540 (S.D.N.Y. 2009) ("To determine whether an allegedly misleading statement is material, a court must engage "in a fact-specific inquiry"– there is no bright line rule.").[1] The "'total mix' of information" in this case – as the government has itself brought out in its case-in-chief – includes evidence about the existence and effectiveness of hedges.

_____

[1] Although *Basic*, *ECA,* and *Landmen Partners* are civil cases, the standard of materiality they employ applies equally in criminal securities fraud cases. *See United States v. Causey*, No. CRIM. H-04-025-SS, 2005 WL 2647976 , at *3 (S.D. Tex. Oct. 17, 2005) (applying materiality standard in *Basic* in judging whether indictment sufficiently charged criminal securities fraud where "[t]he definition and scope of 'materiality' are the same in both civil and criminal contexts"), *citing United States v. Gleason*, 616 F.2d 2, 28 (2d Cir. 1979) ("[T]he same standards apply to civil and criminal liability under the securities laws"). Moreover, the test for materiality under the mail and wire fraud statutes is even more onerous. *See United States v. Mittelstaedt*, 31 F.3d 1208, 1217-18 (2d Cir. 1994) ("disagree[ing]" with the government's argument that the test for "materiality" under the mail and wire fraud statutes was the same as the test for materiality under the securities laws and holding that "[t]o be material, the information withheld either must be of some independent value or must bear on the ultimate value of the transaction") (citation omitted).

9

An analogous situation occurred in *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2 (2d Cir. 1996), *cert. denied*, 520 U.S. 1264, 117 S.Ct. 2433 (1997), where the Second Circuit affirmed the dismissal of a securities fraud case. The complaint alleged that the prospectuses of three closed-end Trusts misled investors into thinking their investments would be perfectly balanced to remain stable as interest rates rose and fell,[2] when in fact the Trusts attempted only a *partial* balancing and invested disproportionately in instruments that would benefit from rising interest rates. *Id.* at 7. The Second Circuit, however, held that this false assurances were counteracted by "extensive cautionary language." *Id.* The Second Circuit, therefore, held: "While we agree that the prospectuses contain no specific statement that there was a bias in favor of rising interest rates, we find that the prospectuses implicitly and clearly communicated such a bias." *Id. Cf. Day v. Staples, Inc.*, 555 F.3d 42, 57-58 (1st Cir. 2009) (affirming grant of summary judgment, holding that "complaints about purely internal practices that are not financial in nature and are not reported to shareholders do not meet the materiality requirement for an objectively reasonable belief in shareholder fraud").

In the instant case, the "total mix of information" not only included numerous disclaimers in Doral's public filings with the SEC but also the existence of hedges. That is, the jury must decide whether these disclosures, ***combined with the hedges***, renders immaterial any false statements about the caps being "embedded." *See also Rosenzweig v.*

---

[2] For example, the prospectuses assured investors that the Trusts' Advisor "will manage the portfolio ... in an attempt to minimize the impact of changes in interest rates on the net asset value of the portfolio." 98 F.3d at 5.

*Azurix Corp.*, 198 F. Supp. 2d 862, 882-83 (S.D. Tex. 2002) (finding assertions by Azurix that it had performed "a due diligence review ... to evaluate potential projects to assess their value" deemed immaterial in light of disclosed risks and disclaimers), *aff'd Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003).  Yet, the Court's instructions stripped the element of "materiality" from the jury's consideration.  This error cannot be cured by the final instructions on the law, or by any re-instructions, because the Court also made it abundantly clear to the jury that the existence of hedges was a distraction and irrelevant to any issue concerning Mr. Levis's statements, necessarily including "materiality."

## C.   <u>Fraudulent Intent</u>

Fraudulent intent is an essential element of all counts of the Indictment in this case. Indeed, it has probably been *the* most contested element of the charges so far.  "In a case ... where the element of willfulness is critical to the defense, the defendant is entitled to wide latitude in the introduction of evidence tending to show lack of intent."  *United States v. Garber*, 607 F.2d 92, 99 (5th Cir. 1979) (en banc).

Mr. Levis has the right not only to deny criminal intent; he has the right to introduce evidence that would show that any misrepresentations about the caps being "embedded" were not made with fraudulent intent.  Certainly, Mr. Levis' belief that hedges existed that would perform the same function as any "embedded" caps would negate any inference that he intended to defraud investors with such statements.  Moreover, the evidence is clear that the concepts of purchased caps (i.e., hedging) and embedded caps, in addition to being

11

functionally equivalent, are sufficiently complex and susceptible to inadvertent misuse. The Court's instructions, however, preclude the jury from considering the existence of hedging even for the limited and relevant purpose of showing that any misstatements were the product of confusion and mistake.

### III. THE COURT'S COMMENTS AND INSTRUCTIONS HAVE EFFECTIVELY DIRECTED A VERDICT AGAINST MR. LEVIS ON THE ELEMENTS OF MATERIALITY AND CRIMINAL INTENT

A mistrial should be granted because the Court's comments and instructions to the jury have, in effect, transformed the "fraud" charges brought by the Grand Jury into "false statement" charges that, under the Court's instructions, require only general intent. As previously discussed, the Court told the jury that the only *mens rea* required to convict Mr. Levis was evidence that he "knew" his alleged statements about "embedded caps" were false. The Court has thus simultaneously constructively amended the Indictment and granted summary judgment to the government on what were two essential elements of the fraud charges, materiality and fraudulent intent. Yet, the law is clear that a trial court may not direct a verdict on an element of an offense. *See, e.g., United States v. Aramony*, 88 F.3d 1369, 1385-87 (4th Cir. 1996), *cert. denied*, 117 S.Ct. 1842 (1997) (district court committed reversible error by instructing the jury, in a money laundering case, that it was not necessary for the Government to show that the defendant actually intended or anticipated an effect on commerce); *accord United States v. DeFries*, 129 F.3d 1293, 1311-12 (D.C. Cir. 1997) (directing verdict on interstate commerce element of RICO reversible error and not subject

to harmless error analysis under *Sullivan*); *United States v. Medina*, 90 F.3d 459, 462-64 (11th Cir. 1996) (reversible error for district court to inform the jury "that the matter of jurisdiction had been resolved by the court and was of no concern to them," explaining that "a trial judge cannot direct a verdict in favor of the government for all *or even one element of a crime*.") (emphasis added).

Any attempt to "cure" this error in the Court's final instructions would be too little too late, since the Court has plainly told the jury what *the Court* considers to be the "essence" of the case and what the Court considers to be irrelevant and misleading.

## IV. THE COURT'S COMMENTS AND INSTRUCTIONS HAVE IMPROPERLY UNDERMINED MR. LEVIS' THEORY OF DEFENSE AND INTERFERED WITH HIS RIGHT TO TESTIFY

The Court's exclusion of further evidence on hedges and its instructions to the jury have now prevented the jury from considering that evidence as supporting Mr. Levis' "good faith" defense. As discussed above, the Court had no authority to make such rulings based on *its* views on the evidence. Despite the Court's rulings, Mr. Levis intends to submit a "theory of defense" instruction based on his contention that evidence about the hedges negates criminal intent and shows that any mis-statements about embedded caps were immaterial. The Court has certainly flagged its intention to deny such an instruction and any further evidence that would support it. The well established precedent in this and other circuits underscores the Court's error.

13

A defendant "is entitled to instructions relating to his theory of defense, for which there is some foundation in the proof, no matter how tenuous that defense may appear to the trial court." *United States v. Dover*, 916 F.2d 41, 47 (2d Cir. 1990) (reversing conviction; citations omitted).  As the Second Circuit explained in *United States v. Durham*, 825 F.2d 716, 718-19 (2d Cir. 1987):

> We have repeatedly recognized a criminal defendant's right to a charge which reflects the defense theory. In *United States v. Pedroza*, 750 F.2d 187, 205 (2d Cir. 1984) (quoting *United States v. O'Connor*, 237 F.2d 466, 474 n. 8 (2d Cir. 1956) and citing cases), we stated that "it is well established that '[a] criminal defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible, that evidence may be.'"  We note that this rule is accepted in other circuits as well.  *See, e.g., United States v. Plummer*, 789 F.2d 435, 438 (6th Cir. 1986); *United States v. Wellington*, 754 F.2d 1457, 1463 (9th Cir. 1985), *cert. denied*, 474 U.S. 1032, 106 S. Ct. 592, 593, 88 L. Ed. 2d 573 (1986); *United States v. Hyman*, 741 F.2d 906, 912 (7th Cir. 1984).

*Accord United States v. Ruiz*, 59 F.3d 1151 (11th Cir. 1995); *Strauss v. United States*, 376 F.2d 416 (5th Cir. 1967).  Moreover, in deciding whether such a foundation exists, the Court is obliged to view the evidence in the light most favorable *to the accused*.  *United States v. Middletown*, 690 F.2d 820, 826 (11th Cir. 1982), *cert. denied*, 103 S.Ct. 1497 (1983); *United States v. Lewis*, 592 F.2d 1282, 1286 (5th Cir. 1979).  In *Middletown*, the court emphasized the extraordinarily low threshold burden that a defendant must satisfy in order to receive a theory of defense instruction:

14

> "...[T]he defendant in a criminal case is entitled to have presented instructions relating to a theory of defense for which there is *any foundation* in the evidence." *Perez v. United States*, 297 F.2d 12, 13-14 (5th Cir. 1961) (emphasis supplied). We find no requirement that a requested charge encompass, in the trial judge's eyes, a believable or sensible defense. The judge is the law-giver. He decides whether the facts constituting the defense framed by the proposed charge, if believed by the jury, are legally sufficient to render the accused innocent. [T]he judge must, therefore, be cautious and unparsimonious in presenting to the jury *all* of the possible defenses which the jury may choose to believe. We hold that where the defendant's proposed charge presents, when properly framed, a valid defense, and where there has been some evidence relevant to that defense adduced at trial, then *the trial judge may not refuse the charge on that defense*.

690 F.2d at 826, *quoting with approval*, *Strauss v. United States*, 376 F.2d at 419 (emphasis in quote added by the Eleventh Circuit) (emphasis added).

We respectfully submit that evidence concerning the hedges plainly satisfies Mr. Levis' minimal burden to show that any misrepresentations about "embedded caps" were not made with criminal intent and/or were immaterial. By unilaterally excluding the evidence and instructing the jury that this evidence is irrelevant, the Court has improperly usurped the jury's function and deprived Mr. Levis of valid defenses to essential elements of the charges.

Moreover, Mr. Levis can not effectively exercise his right to testify. The Court's comments and instructions to the jury undermine any testimony Mr. Levis would give regarding his good faith.

## V.    MR. LEVIS HAS THE RIGHT TO CONFRONT THE EVIDENCE INTRODUCED BY THE GOVERNMENT ABOUT HEDGES

The government in this case chose to elicit testimony from several witnesses about hedges.  The Court cannot now bar Mr. Levis from confronting that evidence during the defense case.  The Eleventh Circuit addressed an analogous situation in *United States v. Goodman*, 850 F.2d 1473 (11th Cir. 1988).  In that case, the defendants were charged under the Sherman Act, 15 U.S.C. § 1, with criminal antitrust violations.   Since the antitrust conspiracy at issue in *Goodman* was a *per se* violation of the Sherman Act, the government was not required to prove that the market was actually harmed.  In order to prejudice the jury against the defendants, however, the government introduced evidence that the conspiracy did, in fact, adversely affect the market rates for the industry in question.  When the defendants sought to refute this market evidence, the district court excluded it as irrelevant to the essential elements of the Sherman Act charge.  The defendants were convicted, but the Eleventh Circuit reversed.  Despite the fact that the government's evidence was not probative of an element of its case, the Eleventh Circuit held that the government's use of the evidence opened the door for the defendants to also develop testimony on the subject.

Under *Goodman*, the government does not have the right to introduce evidence about the hedges without permitting Mr. Levis to introduce other evidence about them.

Respectively submitted,

  /s/ Roy Black
ROY BLACK, ESQ.
(FL Bar No. 126088)

16

HOWARD SREBNICK, ESQ.
(FL Bar No. 919063)
MARIA D. NEYRA, ESQ.
(FL Bar No. 074233)
BLACK, SREBNICK, KORNSPAN
& STUMPF, P.A.
201 South Biscayne Boulevard
Suite 1300
Miami, Florida 33131
Phone (305) 371-6421
Fax (305) 358-2006
rblack@royblack.com.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that on April 22, 2010, I electronically filed the foregoing

document through CM/ECF, which will then transmit a copy of the document to:

William Stellmach, AUSA
U.S. Attorney's Office
Southern District of New York
1 St. Andrews Plaza
New York, NY 10007
William.stellmach@usdoj.gov.

 _/s/ Roy Black_
ROY BLACK, ESQ.

17