# EXHIBIT A

## Miller, David (USANYS)

| | |
|---|---|
| **From:** | Miller, David (USANYS) |
| **Sent:** | Monday, October 18, 2010 4:29 PM |
| **To:** | 'Scott Srebnick'; 'Howard SREBNICK'; 'Maria NEYRA'; 'Roy BLACK' |
| **Cc:** | Litt, Marc (USANYS); 'Anthony, Jason' |
| **Subject:** | US v. Levis |

Counsel,

We are writing about expert disclosure in the Levis proceeding. We have not yet received your expert's report, CV, and a copy of the powerpoint presentation the defense made to the probation officer. At this juncture, the Government does not intend to call an expert to the stand at the November 10 hearing (subject, of course, to rebuttal based upon your expert's testimony). Accordingly, we do not intend to produce an expert report in this matter.

We request immediate disclosure of your expert's report, his/her CV, and a copy of the powerpoint presentation, as promised on previous conference calls. Please provide disclosure of such material on or before Friday, October 22. Thank you very much.

David I. Miller
Assistant United States Attorney
United States Attorney's Office
Southern District of New York



# EXHIBIT B

## Miller, David (USANYS)

| | |
|---|---|
| **From:** | Miller, David (USANYS) |
| **Sent:** | Tuesday, October 26, 2010 3:05 PM |
| **To:** | 'Scott Srebnick'; 'Howard SREBNICK'; 'Maria NEYRA'; 'Roy BLACK' |
| **Cc:** | Litt, Marc (USANYS); 'Anthony, Jason' |
| **Subject:** | US v. Levis |

Counsel,

We received your voicemail about our witnesses' unavailability on 11/10.  We understand from you that defense counsel are unavailable beginning 11/16 through early December.  Accordingly, while our preference would be to move the Fatico a week and a half later, we propose the following options:

1) The Fatico be moved to a date in December.  Please let us know your availability in December.
2) The defense waives its face-to-face confrontation rights and agrees to have Mr. Saluck testify by telephone from Europe on 11/10.
3) We ask the Court to select another date for just Mr. Saluck's testimony when he is in the country.

We intend to write to the Court this week on this issue.  Please let us know your thoughts as soon as possible.  Thanks.

David Miller


David I. Miller
Assistant United States Attorney
United States Attorney's Office
Southern District of New York



1

# EXHIBIT C

**Miller, David (USANYS)**

| | |
|---|---|
| **From:** | Howard SREBNICK [HSREBNICK@royblack.com] |
| **Sent:** | Wednesday, October 27, 2010 3:11 PM |
| **To:** | Miller, David (USANYS); Maria NEYRA; Roy BLACK; Scott Srebnick |
| **Cc:** | Jason Anthony; Litt, Marc (USANYS) |
| **Subject:** | Re: US v. Levis |

Gentlemen:

We plan to be in New York on November 9, so we have no objection to an in court examination or a deposition of Mr. Saluck on that day.  The other two proposals do not work for us.  I am scheduled to begin a 3-plus week trial on November 22, and Roy is scheduled to begin a 3-plus week trial on December 6, so we are not available in December for a Fatico hearing, as I indicated in my voice mail to you earlier this week.  We do not think we can effectively examine Mr. Saluck by telephone because it would hamper the ability to confront him with documents.  So let us know if November 9 works for you.

Howard M. Srebnick, Esq.



www.royblack.com
********************************************************
The information in this email transmission is privileged and confidential. If you are not the intended recipient, nor the employee or agent responsible
for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this transmission (including any attachments) is strictly prohibited. If you have received this email in error, please notify the sender by email reply. Thank you.
>>> "Miller, David (USANYS)" <David.Miller@usdoj.gov> 10/26/2010 3:05 PM >>>
Counsel,

We received your voicemail about our witnesses' unavailability on 11/10.  We understand from you that defense counsel are unavailable beginning 11/16 through early December.  Accordingly, while our preference would be to move the Fatico a week and a half later, we propose the following options:

1)  The Fatico be moved to a date in December.  Please let us know your availability in December.
2)  The defense waives its face-to-face confrontation rights and agrees to have Mr. Saluck testify by telephone from Europe on 11/10.
3)  We ask the Court to select another date for just Mr. Saluck's testimony when he is in the country.

We intend to write to the Court this week on this issue.  Please let us know your thoughts as soon as possible.  Thanks.

David Miller

David I. Miller
Assistant United States Attorney
United States Attorney's Office
Southern District of New York

# EXHIBIT D

## Miller, David (USANYS)

| | |
|---|---|
| **From:** | Miller, David (USANYS) |
| **Sent:** | Wednesday, November 03, 2010 5:40 PM |
| **To:** | 'Howard SREBNICK'; Maria NEYRA; Roy BLACK; scott@srebnicklaw.com |
| **Cc:** | Litt, Marc (USANYS); 'Anthony, Jason' |
| **Subject:** | US v. Levis |
| **Attachments:** | Meisenbach Capital Loss Analysis.pdf; Holland Capital Loss Analysis.xlsx |

Counsel,

We write to advise you of the Government's position concerning sentencing in this case.  We no longer intend to call any witnesses on 11/10/10 and therefore believe that a Fatico hearing is no longer necessary.  The Government intends to address all sentencing issues by written submission -- relying on trial testimony and evidence and a limited number of additional documents and affidavits.   We propose the following briefing schedule in advance of the defendant's 11/16/10 sentencing:

Wed 11/10/10:     Parties file sentencing memoranda with the Court;
Mon 11/15/10:     Parties file any response memoranda with the Court.

With respect to the Guidelines loss calculation, as we previously informed you, the Government intends to argue that a conservative estimate of the loss amount may be derived from the evidence concerning investor victims such as Randy Saluck/Meisenbach Capital (approximately $3 million), Holland Capital (approximately $29 million), and selected other entities including Fidelity.  (Attached to this email are documents summarizing the losses suffered by Meisenbach Capital and Holland Capital.  We are awaiting additional data from other victims, including Fidelity, and will forward any such summaries on to you as soon as we receive them.)

With respect to the number of victims, the Government intends to argue that there are over 250 victims (see USSG 2B1.1(b)(2)) who held Doral shares during the relevant time and who suffered a loss through the diminution of their holdings as a consequence of the defendant's fraud.

Finally, the Government does not intend to argue that the Guidelines calculation above understates the loss, nor does it intend to argue that an above-Guidelines sentence is warranted.  Nevertheless, the Government does intend, in the context of discussing the pertinent 3553(a) factors, to take the position that the impact of the defendant's fraud was greater than the Guidelines loss articulated above.

Please let us know your position regarding the need for a hearing and the proposed briefing schedule so that we can promptly provide notice to the Court.

David Miller/Marc Litt


-----Original Message-----
From: Howard SREBNICK [mailto:HSREBNICK@royblack.com]
Sent: Tuesday, November 02, 2010 2:40 PM
To: Miller, David (USANYS); Litt, Marc (USANYS)
Cc: Maria NEYRA; Roy BLACK; scott@srebnicklaw.com
Subject: Fw: US v. Levis

Marc, David-

Following up on previous email requesting trading records of alleged victims. See below.
Please advise.
Thanks.

Howard Srebnick
████████████

-----Original Message-----
From: Howard SREBNICK
To: Maria NEYRA <MNEYRA@royblack.com>
To: Roy BLACK <RBLACK@royblack.com>
Cc:  <AnthonyJ@SEC.GOV>
To:  <scott@srebnicklaw.com>
To:  <David.Miller@usdoj.gov>
Cc:  <Marc.Litt@usdoj.gov>

Sent: 10/29/2010 3:37:31 PM
Subject: Re: US v. Levis

David, Marc-
Insofar as "victim" witnessed will testify at sentencing re "losses," we request the trading
records of those witnesses so that we can determine when and at what price and quantities
they purchased/sold shares or options in Doral.

Howard Srebnick
████████████

-----Original Message-----
From: "Miller, David (USANYS)" <David.Miller@usdoj.gov>
To: Howard SREBNICK <HSREBNICK@royblack.com>
To: Maria NEYRA <MNEYRA@royblack.com>
To: Roy BLACK <RBLACK@royblack.com>
Cc: Jason Anthony <AnthonyJ@SEC.GOV>
To: Scott Srebnick <scott@srebnicklaw.com>
Cc: Marc (USANYS) Litt <Marc.Litt@usdoj.gov>

Sent: 10/28/2010 8:32:28 PM
Subject: RE: US v. Levis

Counsel,


We have learned that Mr. Saluck will now be available on 11/10, so there is no issue anymore
for that day.


David Miller


From: Howard SREBNICK [mailto:HSREBNICK@royblack.com]
Sent: Wednesday, October 27, 2010 3:11 PM
To: Miller, David (USANYS); Maria NEYRA; Roy BLACK; Scott Srebnick
Cc: Jason Anthony; Litt, Marc (USANYS)
Subject: Re: US v. Levis

Gentlemen:

We plan to be in New York on November 9, so we have no objection to an in court examination or a deposition of Mr. Saluck on that day.  The other two proposals do not work for us.  I am scheduled to begin a 3-plus week trial on November 22, and Roy is scheduled to begin a 3-plus week trial on December 6, so we are not available in December for a Fatico hearing, as I indicated in my voice mail to you of earlier this week.  We do not think we can effectively examine Mr. Saluck by telephone because it would hamper the ability to confront him with documents.  So let us know if November 9 works for you.

Howard M. Srebnick, Esq.



www.royblack.com <http://www.royblack.com/>

****************************************************************
The information in this email transmission is privileged and confidential. If you are not the intended recipient, nor the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this transmission (including any attachments) is strictly prohibited. If you have received this email in error, please notify the sender by email reply. Thank you.

>>> "Miller, David (USANYS)" <David.Miller@usdoj.gov> 10/26/2010 3:05 PM
>>> >>>

Counsel,

We received your voicemail about our witnesses' unavailability on 11/10.  We understand from you that defense counsel are unavailable beginning 11/16 through early December.  Accordingly, while our preference would be to move the Fatico a week and a half later, we propose the following options:

1)      The Fatico be moved to a date in December.  Please let us know your availability in December.

2)      The defense waives its face-to-face confrontation rights and agrees to have Mr. Saluck testify by telephone from Europe on 11/10.

3)      We ask the Court to select another date for just Mr. Saluck's testimony when he is in the country.


We intend to write to the Court this week on this issue.  Please let us know your thoughts as soon as possible.  Thanks.


David Miller



David I. Miller

Assistant United States Attorney

United States Attorney's Office

Southern District of New York



# EXHIBIT E

**Miller, David (USANYS)**

| | |
|---|---|
| **From:** | Howard SREBNICK [HSREBNICK@royblack.com] |
| **Sent:** | Thursday, November 04, 2010 12:51 PM |
| **To:** | Maria NEYRA; Roy BLACK; scott@srebnicklaw.com; Miller, David (USANYS) |
| **Cc:** | AnthonyJ@SEC.GOV; Litt, Marc (USANYS) |
| **Subject:** | Re: US v. Levis |

Marc, David-
I conferred with Roy and we have no objection to  affidavits from representatives of investor
victims that would simply authenticate the loss summaries/trading data.
We have no objection on authentication grounds to documents produced in discovery that were
not received in evidence, and publicly-available documents (e.g., Doral's SEC filings,
analyst reports, etc.).
And we have no objection to the proposed briefing schedule but would like to see a draft of
the letter you propose to send to Judge Griesa before you transmit it to the court.

Howard Srebnick

-----Original Message-----
From: "Miller, David (USANYS)" <David.Miller@usdoj.gov>
To: Howard SREBNICK <HSREBNICK@royblack.com>
To: Maria NEYRA <MNEYRA@royblack.com>
To: Roy BLACK <RBLACK@royblack.com>
Cc: <AnthonyJ@SEC.GOV>
To: <scott@srebnicklaw.com>
Cc: Marc (USANYS) Litt <Marc.Litt@usdoj.gov>

Sent: 11/4/2010 9:27:08 AM
Subject: Re: US v. Levis

We anticipate relying on a limited number of affidavits from representatives of investor
victims that would authenticate the loss summaries/trading data.  The documents that we
expect to include as exhibits would consist of trial exhibits, documents produced in
discovery that were not received in evidence, and publicly-available documents (e.g., Doral's
SEC filings, analyst reports, etc.).

If at all possible, and out of courtesy to the court, we would like to advise chambers this
afternoon.


----- Original Message -----
From: Howard SREBNICK [mailto:HSREBNICK@royblack.com]
Sent: Thursday, November 04, 2010 07:49 AM
To: Maria NEYRA <MNEYRA@royblack.com>; Roy BLACK <RBLACK@royblack.com>; scott@srebnicklaw.com
<scott@srebnicklaw.com>; Miller, David (USANYS)
Cc: AnthonyJ@SEC.GOV <AnthonyJ@SEC.GOV>; Litt, Marc (USANYS)
Subject: Re: US v. Levis

Marc, David:
What do you have in mind when you indicate you may submit additional documents and
affidavits?

Howard Srebnick

-----Original Message-----
From: "Miller, David (USANYS)" <David.Miller@usdoj.gov>
To: Howard SREBNICK <HSREBNICK@royblack.com>
To: Maria NEYRA <MNEYRA@royblack.com>
To: Roy BLACK <RBLACK@royblack.com>
Cc: Jason Anthony <AnthonyJ@SEC.GOV>
To: <scott@srebnicklaw.com>
Cc: Marc (USANYS) Litt <Marc.Litt@usdoj.gov>

Sent: 11/3/2010 5:39:38 PM
Subject: US v. Levis

Counsel,

We write to advise you of the Government's position concerning sentencing in this case.  We
no longer intend to call any witnesses on 11/10/10 and therefore believe that a Fatico
hearing is no longer necessary.  The Government intends to address all sentencing issues by
written submission -- relying on trial testimony and evidence and a
limited number of additional documents and affidavits.   We propose the
following briefing schedule in advance of the defendant's 11/16/10
sentencing:

Wed 11/10/10:      Parties file sentencing memoranda with the Court;
Mon 11/15/10:      Parties file any response memoranda with the Court.

With respect to the Guidelines loss calculation, as we previously informed you, the
Government intends to argue that a conservative estimate of the loss amount may be derived
from the evidence concerning investor victims such as Randy Saluck/Meisenbach Capital
(approximately
$3 million), Holland Capital (approximately $29 million), and selected other entities
including Fidelity.  (Attached to this email are documents summarizing the losses suffered by
Meisenbach Capital and Holland Capital.  We are awaiting additional data from other victims,
including Fidelity, and will forward any such summaries on to you as
soon as we receive them.)

With respect to the number of victims, the Government intends to argue that there are over
250 victims (see USSG 2B1.1(b)(2)) who held Doral shares during the relevant time and who
suffered a loss through the diminution of their holdings as a consequence of the defendant's
fraud.


Finally, the Government does not intend to argue that the Guidelines calculation above
understates the loss, nor does it intend to argue that an above-Guidelines sentence is
warranted.  Nevertheless, the Government does intend, in the context of discussing the
pertinent 3553(a) factors, to take the position that the impact of the defendant's fraud was
greater than the Guidelines loss articulated above.

Please let us know your position regarding the need for a hearing and the proposed briefing
schedule so that we can promptly provide notice to the Court.

David Miller/Marc Litt


-----Original Message-----

```
From: Howard SREBNICK [mailto:HSREBNICK@royblack.com]
Sent: Tuesday, November 02, 2010 2:40 PM
To: Miller, David (USANYS); Litt, Marc (USANYS)
Cc: Maria NEYRA; Roy BLACK; scott@srebnicklaw.com
Subject: Fw: US v. Levis
```

Marc, David-
Following up on previous email requesting trading records of alleged victims. See below.
Please advise.
Thanks.

Howard Srebnick

```
-----Original Message-----
From: Howard SREBNICK
To: Maria NEYRA <MNEYRA@royblack.com>
To: Roy BLACK <RBLACK@royblack.com>
Cc:  <AnthonyJ@SEC.GOV>
To:  <scott@srebnicklaw.com>
To:  <David.Miller@usdoj.gov>
Cc:  <Marc.Litt@usdoj.gov>

Sent: 10/29/2010 3:37:31 PM
Subject: Re: US v. Levis
```

David, Marc-
Insofar as "victim" witnessed will testify at sentencing re "losses," we request the trading records of those witnesses so that we can determine when and at what price and quantities they purchased/sold shares or options in Doral.

Howard Srebnick

```
-----Original Message-----
From: "Miller, David (USANYS)" <David.Miller@usdoj.gov>
To: Howard SREBNICK <HSREBNICK@royblack.com>
To: Maria NEYRA <MNEYRA@royblack.com>
To: Roy BLACK <RBLACK@royblack.com>
Cc: Jason Anthony <AnthonyJ@SEC.GOV>
To: Scott Srebnick <scott@srebnicklaw.com>
Cc: Marc (USANYS) Litt <Marc.Litt@usdoj.gov>

Sent: 10/28/2010 8:32:28 PM
Subject: RE: US v. Levis
```

Counsel,


We have learned that Mr. Saluck will now be available on 11/10, so there is no issue anymore for that day.


David Miller

```
From: Howard SREBNICK [mailto:HSREBNICK@royblack.com]
Sent: Wednesday, October 27, 2010 3:11 PM
To: Miller, David (USANYS); Maria NEYRA; Roy BLACK; Scott Srebnick
Cc: Jason Anthony; Litt, Marc (USANYS)
Subject: Re: US v. Levis
```

Gentlemen:

We plan to be in New York on November 9, so we have no objection to an in court examination or a deposition of Mr. Saluck on that day.  The other two proposals do not work for us.  I am scheduled to begin a 3-plus week trial on November 22, and Roy is scheduled to begin a 3-plus week trial on December 6, so we are not available in December for a Fatico hearing, as I indicated in my voice mail to you of earlier this week.  We do not think we can effectively examine Mr. Saluck by telephone because it would hamper the ability to confront him with documents.  So let us know if November 9 works for you.



Howard M. Srebnick, Esq.



www.royblack.com <http://www.royblack.com/>

*****************************************************************
The information in this email transmission is privileged and confidential. If you are not the intended recipient, nor the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this transmission (including any attachments) is strictly prohibited. If you have received this email in error, please notify the sender by email reply. Thank you.

>>> "Miller, David (USANYS)" <David.Miller@usdoj.gov> 10/26/2010 3:05 PM

>>> >>>

Counsel,


We received your voicemail about our witnesses' unavailability on 11/10.
We understand from you that defense counsel are unavailable beginning

11/16 through early December.  Accordingly, while our preference would be to move the Fatico a week and a half later, we propose the following options:


1)     The Fatico be moved to a date in December.  Please let us know your availability in December.

2)     The defense waives its face-to-face confrontation rights and agrees to have Mr. Saluck testify by telephone from Europe on 11/10.

3)     We ask the Court to select another date for just Mr. Saluck's testimony when he is in the country.


We intend to write to the Court this week on this issue.  Please let us know your thoughts as soon as possible.  Thanks.


David Miller



David I. Miller

Assistant United States Attorney

United States Attorney's Office

Southern District of New York



# EXHIBIT F

## Miller, David (USANYS)

| | |
|---|---|
| **From:** | Miller, David (USANYS) |
| **Sent:** | Monday, November 08, 2010 4:43 PM |
| **To:** | 'ross_kapitansky@nysp.uscourts.com' |
| **Cc:** | 'Howard SREBNICK'; Maria NEYRA; Roy BLACK; scott@srebnicklaw.com; Litt, Marc (USANYS); 'Anthony, Jason' |
| **Subject:** | Presentence Report |
| **Importance:** | High |

Mr. Kapitansky,

The Government will be submitting its full position on loss and number of victims in its sentencing submission, which it will be filing this Wednesday, November 10.  It is our understanding, however, that you need our position today because the PSR will be issued tomorrow, Tuesday.

It is our current position that the Guidelines loss is conservatively calculated to be at least $75 million, which is the aggregate loss suffered by three investors that Levis directly misled in communications with their respective representatives (Meisenbach Capital, Holland Capital, and Fidelity).  Representatives for each of these three entities testified at trial.  The loss calculation for each of those victims is attached below.  We have just today received a victim impact statement from Doral's counsel, alleging a loss to Doral of at least $131.6 million, but we have not yet had a chance to consider whether any or all of this amount should also be included in the Guidelines loss amount. Accordingly, at this point, the Government contends that the loss enhancement is currently at least 24 offense levels under 2B1.1(b)(1)(M).

Additionally, we believe that the number of victims is greater than 250, warranting a six-level increase under 2B1.1(b)(2).  Doral's 2004 10-K states that there were 482 shareholders as of 1/27/05.  Furthermore, there were numerous investors who held interests in Doral through mutual funds with such entities as Fidelity.  Based on the trial testimony and evidence concerning the significance of Levis's misrepresentations about IO valuation methodology and the existence of contractual caps, it is reasonable to conclude that more than 250 investors suffered when Doral's stock price plummeted as a consequence of its disclosures in 2005, including its disclosures about the valuation and interest rate risk attendant to one of its most important assets.

Moreover, as the draft PSR noted, a four-level enhancement under 2B1.1(b)(17)(A) is appropriate because the offense involved a violation of securities law and the defendant was an officer or director of a publicly-traded company.

Accordingly, the Government contends that the Guidelines range is no less than 324-405 months.

Please call if you have any questions.

David Miller

  

Meinsenbach Capital Loss Analy...   Holland Capital Loss Analysis....   Fidelity Loss Analysis.xlsx

David I. Miller
Assistant United States Attorney
United States Attorney's Office
Southern District of New York

# EXHIBIT G

# In The Matter Of:

## *UNITED STATES OF AMERICA v.*
## *MARIO S. LEVIS A/K/A SAMMY LEVIS*

---

## *VOLUME 10*
## *April  9, 2010*

---

## *TRIAL*
## *SOUTHERN DISTRICT REPORTERS*
## *500 PEARL STREET*
## *NEW YORK., NY 10007*
## *212-805-0300*

Original File 049WLEVF.txt, Pages 1465-1620 (156)

**Word Index included with this Min-U-Script®**

Page 1537

[1] were getting. So that's the actual spread which ranged between
[2] 4, 5, 6 percent.
[3]     **MR. ANTHONY:** Your Honor, we may have a more legible
[4] copy.
[5]     **THE COURT:** If you take 131 million and you take 3
[6] percent of that, it gives you --
[7]     **MR. BLACK:** Your Honor, I think it is 191. It is hard
[8] to read, but that first column says 191.
[9]     **THE COURT:** Let's start with 191.
[10]     **MR. ANTHONY:** We may have a more legible example we
[11] can use, if that will be okay?
[12]     **THE COURT:** We want to get the method. We can
[13] certainly benefit from the figures, too. That is 5.7 million,
[14] roughly. Where do we go from there?
[15]     **THE WITNESS:** And then the last factor was 3.884, the
[16] multiple.
[17]     **THE COURT:** That was a multiple to sort of estimate
[18] the market value. Is that right?
[19]     **THE WITNESS:** Yes.
[20]     **THE COURT:** All right. Go ahead, please, go ahead.
[21]     **MR. ANTHONY:** Thank your Honor.
[22] **BY MR. ANTHONY:**
[23] **Q.** Mr. Mendez, do you recognize what looks like initials to
[24] the right of this document?
[25] **A.** Yes.

Page 1538

[1] **Q.** Do you have an understanding of whose initials those are?
[2] **A.** My understanding was Jose Lopez from Morgan Stanley was
[3] signing of those initials.
[4] **Q.** Can you turn to the 5th page of this document.
[5] **A.** Yes.
[6] **Q.** Would you explain for us what is at the bottom of this
[7] document beginning with, "Tota"?
[8] **A.** Would you give me the question again, please.
[9] **Q.** Can you explain for us what is at the bottom of this
[10] document beginning with the total.
[11] **A.** That was the totalization of the IOs aggregate for value.
[12] **Q.** What is this below there? It looks like a signature?
[13] **A.** The signature from Jose Lopez from Morgan Stanley.
[14] **Q.** Mr. Mendez, could you flip back to Government Exhibit 318.
[15] Could you go to the second page at the top. Could you explain
[16] what the section under obtained management's internal
[17] evaluation of the portfolio and tested its mathematical
[18] exceptions meets, what that is referring to?
[19] **A.** It refers that we obtained this constant cash flow model
[20] provided by management and checked the mathematical accuracy,
[21] which is the math of the schedule.
[22] **Q.** I think when we were talking earlier, you also mentioned
[23] that PWC did something additional and came up with some kind of
[24] additional value for the IOs. Can you explain what you meant
[25] by that.

Page 1539

[1] **A.** Well, we didn't come up with our valuation of the IOs. We
[2] performed an analysis to evaluate the valuation of the IOs as
[3] provided by management. To do that, we evaluated a number of
[4] assumptions to see -- ended up using the evaluation. Then that
[5] is described a little bit later in the working paper from what
[6] I see.
[7] **Q.** Amongst these three, I will refer to them as valuations, I
[8] realize yours was a limited exercise to do something, but
[9] amongst those three, the work the audit team did, the internal
[10] model and Morgan Stanley model, what was your understanding of
[11] which one of those carried the most weight in your audit
[12] evidence?
[13]     **THE COURT:** I am sorry. Could you just state the
[14] question again.
[15]     **MR. ANTHONY:** Sure.
[16] **BY MR. ANTHONY:**
[17] **Q.** Mr. Mendez, amongst the work the audit team did, the Doral
[18] internal model and the Morgan Stanley valuation, which of those
[19] three carried the most weight as audit evidence at this point
[20] in time?
[21] **A.** The external valuation carries the most weight.
[22] **Q.** Why is that?
[23] **A.** Because an external valuation was considered competent
[24] evidence in assessing the valuation of the instruments.
[25] **Q.** I think you also mentioned earlier that part of your audit

Page 1540

[1] work during this period was to speak with someone at PWC about
[2] the IO valuations. Is that right?
[3] **A.** Yes.
[4] **Q.** What can you tell us about that exercise?
[5] **A.** We asked someone in the U.S. mortgage banking industry with
[6] experience to provide us with input as to what the company was
[7] doing to value the instruments. So I talked to the people
[8] about it and provided the Excel calculation from management and
[9] the analysis that we were performing to ask for this feedback.
[10] **Q.** Which feedback did you receive from this person?
[11] **A.** He basically described the purpose of the discounted cash
[12] flow model that the company was using served to corroborate
[13] what the company was receiving from Morgan Stanley, that the
[14] mathematical accuracy of present value, of present valuation
[15] declaration was okay, the formula.
[16]     He also indicated that management should consider
[17] segregating the portfolio into different characteristics of the
[18] loans, like terms or maturity dates and so forth and the
[19] consideration of the floating versus fixed payments that
[20] investors were getting.
[21] **Q.** Did anyone from the valuation group ever visit Puerto Rico
[22] as part of this exercise?
[23] **A.** No.
[24] **Q.** Did they meet with anyone at Doral?
[25] **A.** No.

# EXHIBIT H

# In The Matter Of:

## UNITED STATES OF AMERICA v.
## MARIO S. LEVIS A/K/A SAMMY LEVIS

---

## VOLUME 11
### April  12, 2010

---

## TRIAL
## SOUTHERN DISTRICT REPORTERS
## 500 PEARL STREET
## NEW YORK., NY 10007
## 212-805-0300

Original File 04CWLEVF.txt, Pages 1621-1755 (135)

## Word Index included with this Min-U-Script®

---

[1] about the way we were valuing and the way we were handling this
[2] assignment.
[3]    THE COURT: Could you spell his last name?
[4]    THE WITNESS: B, as in boy, L-A-S-I-N-I.
[5] BY MR. STELLMACH:
[6]    Q. Could you explain for us, Mr. Kaufman, exactly what were
[7] the concerns that Mr. Blah seen knee expressed to you?
[8]    A. Well, he had said that he had tried to get Mr. Ortiz,
[9] Mr. Carlos Ortiz, who was the banker and had substituted who
[10] was doing this before I arrived, this work for Doral, to
[11] understand that he thought that, he was more concerned -- a few
[12] things. But the primary concern was the way we were looking at
[13] the interest rates that would occur in the future, what we call
[14] the forward curve, where rates were projected to be whether up
[15] or down in the future, we, his understanding, I guess he had
[16] seen what they were doing before I arrived, and he wanted me to
[17] readdress the issue of how, the methodology, the methods, the
[18] manner in which we were modeling this portfolio valuation.
[19]    Q. What method or methodology was Popular using when you first
[20] started?
[21]    A. Well, we were using, and this, you know, I didn't get my
[22] hands into this until we got into the process in the first week
[23] or so, but we were using what we call a static, we weren't
[24] using, incorporating the forward curve, we weren't valuing the
[25] portfolio, taking into account where interest rates might go.

[1] We were using a static, meaning a current rate to determine the
[2] value.
[3]    Q. And is a static method also sometimes known as a spot rate?
[4]    A. It is.
[5]    Q. And what did Mr. Blasini tell you about the use of a
[6] forward curve?
[7]    A. Well, what he did is he suggested, I think artfully at that
[8] time, because there are a lot of egos involved, but he
[9] suggested that I contact an expert, you know, in the, in
[10] valuating these type of products from a firm, international,
[11] national, being recognized firm, and he suggested that we talk
[12] to somebody who does this day in and day out to see what the
[13] state of the art, what the current best method of valuing these
[14] portfolios are, so we could get a little more educated. He
[15] wanted me to convince my associate, Mr. Brugueras, to open
[16] himself out, who was the one running the numbers, to be
[17] receptive to what other people were doing to see if we could
[18] improve on our methodology.
[19]    Q. What was your understanding of how the use of a forward
[20] curve would affect the valuation of the IOs?
[21]    A. Well, in a rising rate environment, which I think we were
[22] experiencing at that time, when I started, the use of the
[23] forward curve would have provided a lower value, I think, than
[24] a falling interest rate environment. Given the nature of what
[25] an IO is, it's the excess cash that's available, you know, you

---

[1] that's available in the portfolio, and to the extent that rates
[2] are rising, you would expect that there would be less of that
[3] cash flow. It's one of the primary factors that you would look
[4] the at.
[5]    Q. So after Mr. Blasini recommended contacting David Rios, did
[6] you do that?
[7]    A. Yes. We set up a conference call with Mr. David Rios, from
[8] Credit Suisse, which is the firm that Mr. Blasini had contacted
[9] on our behalf, and Francisco Brugueras and I participated in a
[10] conference call with Mr. Rios regarding the best way to value
[11] these instruments.
[12]    Q. This is still in September 2003?
[13]    A. Early September 2003.
[14]    Q. Could you tell us what happened during that call with
[15] Mr. Rios?
[16]    A. Mr. Rios, it was primarily between Mr. Brugueras and
[17] Mr. Rios, the dialogue. I just listened. They were the ones
[18] more familiar with the actual running of the numbers and the
[19] terminology at that point. And they seemed, the message seemed
[20] to be to Mr. Brugueras that the street or the, the firms that
[21] do this day in and day out are accustomed to using a forward
[22] curve in their analysis.
[23]    Q. After speaking with Mr. Rios, did you make any efforts to
[24] contact anyone at Doral to discuss this issue?
[25]    A. Yes. We proceeded, Mr. Brugueras was instructed to set up

[1] a call with the people at Doral to discuss, one, introduce me
[2] to them, since I had just arrived and I was now in charge. So
[3] as a courtesy call to say hello, I'm the new head of banking,
[4] and, you know, good to meet you. And to then discuss in more
[5] detail kind of this information that we had gotten so they'd
[6] become aware that we thought it would be a better tool in
[7] valuing their portfolio to use the forward curve than the spot
[8] rate.
[9]    Q. Did the call take place?
[10]    A. It did, yes.
[11]    Q. Could you tell us who participated in the call?
[12]    A. It was in the conference room in the investment banking
[13] area, and on the call were Francisco Brugueras, who set it up,
[14] Natalia Guzman, who was there as well, myself, and Mr. Blasini
[15] was there. But he was not identified as being on the call but
[16] he was in the room listening.
[17]    THE COURT: I think I've got a name wrong. Brugueras?
[18]    THE WITNESS: B-R-U-G-U-E-R-A-S, my best guess.
[19]    THE COURT: Thank you.
[20] BY MR. STELLMACH:
[21]    Q. Who participated in that call on Doral's side?
[22]    A. Identified on the call were Mr. Sammy Levis and Mr. David
[23] Levis.
[24]    Q. David Levis is Mr. Sammy Levis' father?
[25]    A. It is.

---