UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
:
UNITED STATES OF AMERICA         :
                                 :           08 Cr. 181 (TPG)
     – against –                 :
                                 :              **OPINION**
MARIO S. LEVIS,                  :
a/k/a "Sammy Levis,"             :
                                 :
                   Defendant.    :
                                 :
------------------------------------------------x

At the sentencing hearing of Mario S. Levis on November 16, 2010, the court agreed, with the parties' consent, to delay an order of restitution for up to 90 days following sentencing, pursuant to 18 U.S.C. § 3664(d)(5).  Only Doral Financial Corporation ("Doral"), Levis's former employer, has submitted a claim for restitution.

**Background**

On April 29, 2010, a jury convicted Levis of securities and wire fraud arising out of alleged misrepresentations that Levis made about Doral's portfolio of interest-only strips ("IO").  The misrepresentations fell into two categories.  First, Levis represented to the investing public that Doral's internal valuation of its IO portfolio was lower than two external valuations that Doral had obtained from "independent" parties.  Second,

Levis represented to certain investors and analysts that the pass-through rates on the portions of interest owed to secondary buyers of Doral's mortgage portfolio were capped, thus protecting the value of the portion of the interest retained by Doral. On November 16, 2010, the court sentenced Levis to 60 months in prison.

In its Victim Impact Statement, Doral contends that the loss caused to Doral by Levis's fraud was $131,607,549.91, consisting of four components: Doral's legal fees, in the amount of $30,080,654.91; compensation paid by Doral to Levis that he did not legitimately earn, in the amount of $835,000; Doral's IO accounting restatement costs, in the amount of $5,691,900; and Doral's payments to settle shareholder class actions, in the amount of $95,000,000. Defendant argues that the Government has not carried its burden of proving Doral's entitlement to any restitution as a matter of law.

## Discussion

Restitution is governed by the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, and contemplates the "exercise of discretion by sentencing courts in determining the measure of value appropriate to restitution calculation in a given case." United States v. Boccagna, 450 F.3d 107, 114 (2d Cir. 2006). The court "shall order restitution to each victim in the full amount of each victim's losses as determined by the court." 18 U.S.C. § 3664(f)(1)(A). A "victim" is a "person directly and proximately harmed as a result of the commission of

an offense for which restitution may be ordered." 18 U.S.C. § 3663(a)(2). The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense is on the Government. 18 U.S.C. § 3664(e). The court resolves disputes about the amount of restitution using a preponderance of the evidence standard. Id.

It is important to note that it was undisputed at trial that Levis was not responsible for the internal valuation methodology of the IO portfolio that Doral reported on its financial statements. The watershed event in the history of Doral's financial reporting was the change of its accounting methodology to incorporate the "forward curve" instead of the "spot rate." Levis was not involved in the choice of methodology either before or after this change. Thus, the court disagrees with Doral's proposition that Levis's "illegal activities led to Doral's restatement of the value of its IOs in its financial statements." Levis was not charged in the criminal case with manipulating the internal accounting methodology or inflating the reported financials. The Government has submitted no proof—not at trial nor now—that Levis's conduct directly caused Doral to restate its earnings or resulted in some specific inflation of the balance sheet or earnings statement figures related to the IOs.

Levis claims that virtually all the costs claimed by Doral were the result of its switch in accounting methodology, which led to a restatement of earnings, thereby triggering an internal investigation, class action lawsuits and an SEC investigation.

1. <u>Legal Fees</u>

Under the MVRA, the court has discretion to include certain attorney's fees in a restitution award. 18 U.S.C. § 3663A. <u>See</u> <u>United States v. Amato</u>, 540 F.3d 153, 160-62 (2d Cir. 2008). Any such fees included as compensable expenses must have been "necessary" and "incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4); <u>see</u> <u>id.</u> at 160. Any attorney's fees to be included under this provision must be tied to the investigation and prosecution of the criminal case. <u>See</u> <u>United States v. Battista</u>, 575 F.3d 226, 233 (2d Cir. 2009).

Doral's Victim Impact Statement attaches a voluminous quantity of invoices from a number of law firms spanning a five-year period. Doral's audit committee and independent directors retained Latham & Watkins in March 2005 to conduct an internal investigation in connection with the circumstances leading up to the company's financial restatement. The investigation lasted about nine months, and the law firm interviewed over 50 current and former Doral employees and directors, including Levis, and reviewed a plethora of documents. Doral hired Cleary Gottlieb Steen & Hamilton to represent it and certain employees in connection with the Government's investigation into issues related to Doral's restatement. Doral paid legal fees to Macht, Shapiro, Arato & Isserles for its assistance in responding to subpoenas in connection with Levis's

criminal trial.  Lastly, Doral paid the legal expenses incurred by directors, officers, employees or agents as a result of requests from the Government for interviews and other information both in relation to Levis's criminal trial and other matters.  In its Victim Impact Statement, Doral requests a total of $30,080,654.91 in restitution for all legal and investigative fees incurred.  However, the court will not award as restitution amounts paid to Latham & Watkins for the internal investigation or to Cleary Gottlieb relating to the Government's investigation because these were about the restatement.

The court will, on the other hand, allow amounts in restitution related to the investigation and prosecution in connection with Levis's criminal case.  In the declaration of Breon S. Peace submitted with Doral's Victim Impact Statement, Doral parses out the amount of fees paid in connection with Levis's criminal case.  Macht, Shapiro, Arato & Isserles was paid $26,047.29.  A number of firms were paid fees for assisting the United States Attorney's Office for the Southern District of New York in its investigation and prosecution of Levis following the resolution of the SEC investigation:  Cleary Gottlieb, $1,577,695.93; Morvillo, Abramowitz, Grad, Iason, Anello & Bohrer, $123,669.78; Skadden, Arps, Slate, Meagher & Flom, $41,316; Stillman, Friedman & Shechtman, $25,308.60; Sidley Austin, $15,940.75; and Wilkie Farr & Gallagher, $84,283.45.  Doral is entitled to be reimbursed for these fees, amounting to a total of $1,894,261.80.

### 2. Compensation Paid by Doral to Levis

Doral claims that it is entitled to restitution for incentive compensation that Levis would not have received but for his fraudulent conduct. Doral seeks the return of two bonuses—one for $410,000 for the fiscal year 2000 and one for $425,000 for the fiscal year 2003. Doral argues that because Levis's incentive compensation was based on the very earnings that he fraudulently distorted, he is not entitled to incentive compensation that he received based on those misrepresentations. Levis's incentive compensation was calculated as five percent of Doral's net adjusted income in excess of an amount equal to a fifteen percent return on common stockholder's equity.

Despite Doral's contentions, there is no sufficient showing that Levis's wrongdoing had any specific effect on either the value of stockholder's equity or income of the company. Therefore, the court will not award the amount of the bonuses as restitution to Doral.

### 3. Doral's Restatement Costs

Doral seeks restitution for $5,691,000 in accounting fees that Doral paid to PriceWaterhouseCoopers for their work in connection with the restatement. As already stated, the Government has failed to demonstrate that Doral's accounting restatement was the result of, or was intended to correct, Levis's conduct. Thus, this branch of the restitution claim is denied.

### 4. Shareholder Class Action Settlements Paid by Doral

Doral seeks indemnification from Levis for $95,000,000 that Doral paid to settle eighteen, class action shareholder lawsuits (consolidated as one action) that were filed between April 20, 2005, and June 14, 2005. The shareholder lawsuits were filed against all directors and several officers, including Levis. The lawsuits began only one day after Doral announced the change of accounting methodology from spot rate to forward yield curve in the internal valuation of its IO portfolio. Doral shareholders alleged that Doral and certain officers and directors, including Levis, had engaged in fraud by failing to disclose material information concerning the valuation of the company's IOs and misleading investors as to Doral's vulnerability to interest rate increases. Doral shareholders also filed derivative actions alleging that Doral's officers and directors had permitted the company to use inadequate procedures and financial controls in connection with Doral's financial statements and made misstatements to the public about Doral's financial controls and performance.

However, these lawsuits were all really driven by the change in accounting methodology, announced on April 19, 2005, which caused a substantial drop in the value of Doral's stock. Also, the lawsuits were against a group of directors and officers, not only against Levis.

There is no sufficient proof that the $95 million paid to settle the lawsuits, or any substantial part thereof, related to the conduct for which

Levis was convicted in the criminal case. Thus, Doral is not entitled to restitution for the amounts paid in the settlement of the class actions.

## Conclusion

For the foregoing reasons, the court awards restitution to Doral in the amount of $1,894,261.80.

SO ORDERED.

Dated: New York, New York
       February 10, 2011

                                                  *Thomas P. Griesa*
                                                  Thomas P. Griesa
                                                  U.S.D.J.


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 02/10/11

- 8 -